## SEBASTIAN COUNTY COAL & MINING COMPANY, Appellant, v. JOHN MAYER and MAYER COAL COMPANY.

### Division One, July 30, 1925.

1. **CONTRACT: Signature: Authenticity: Legal Presumption.** The law will not presume an unlawful or illegal act, and therefore it will be presumed that a letter, written on the stationery of "The Mayer Coal Company" and signed "The Mayer Coal Company, John Mayer," was written by the authority of the company; and particularly so, where there is no denial of its authenticity or a claim that it was not rightfully signed by the company.

2. ———: **Guaranty: Meaning: Extraneous Circumstances.** If letters, by which it is claimed defendants guaranteed the payment of rents by the sub-lessee of a coal mine, are doubtful or dubious in meaning, extraneous matters are competent to explain their meaning, and they will be given the construction which the surrounding circumstances demand should be given to them.

3. ———: ———: **Contained in Correspondence.** A guaranty to pay the debt or default of another must be in writing, but it may appear from letters exchanged between the parties, read in the light of the circumstances in which they were written.

4. ———: **Words of Guaranty: To Pay Rents.** A letter written by defendants, to the original lessors of mining property, in which they agree to be responsible to the named assignee of the lease "for the faithful performance of the original contract" by which the lessee agreed to pay certain rents, and in which is mentioned the fact that said lessee had sub-leased the properties to the men composing a miners' union, is a guaranty by said defendants that the sub-lessees would pay the rents, and upon default authorizes a recovery from defendants by said assignee.

5. ———: ———: **Acceptance.** Where a letter to defendants plainly states the terms of an existing contract and asks defendants to

guarantee its performance, and defendants in their reply unequivo-
cally accept its terms, the two letters constitute a contract; and
especially so, where the writer of the first, in reply to defendants'
letter, states that he understands their letter to be an acceptance
of the terms stated in his first letter, and defendants make no
further reply, but acquiesce in such statement.

Corpus Juris-Cyc. References: Corporations, 14a C. J., Section 2541, p.
594, n. 9. Evidence, 22 C. J., Section 83, p. 147, n. 56; Section 1570, p.
1175, n. 44. Frauds, Statute of, 27 C. J., Section 13, p. 129, n. 85. Guaran-
ty, 28 C. J., Section 42, p. 911, n. 72. Interest, 33 C. J., Section 161, p.
248, n. 93.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn*, Judge.

REVERSED AND REMANDED (*with directions*).

*Cyrus Crane, O. E. Swan* and *John H. Lathrop* for appellant.

(1) The letters offered in evidence constitute a sufficient note or memorandum and an agreement by John Mayer and the Mayer Coal Company to be responsible for the performance of the original lease. Young Men's Christian Assn. v. Dubach, 82 Mo. 475; Lesley Brothers v. Fruit Co., 162 Mo. App. 195; Smith v. Hainline, 253 S. W. 1049; Meramec Cement Co. v. Kreis, 261 Mo. 160; Logan v. Waddle, 252 S. W. 469. (a) There was ample consideration for the agreement. Typewriter Co. v. Realty, 220 Mo. 522. (b) The acceptance was clear. Allen v. Chouteau, 102 Mo. 309; Northrup v. Colter, 150 Mo. App. 639; Embry v. Dry Goods Co., 127 Mo. App. 383. (2) There was complete performance on the part of the plaintiff company which bars the defendants from attempting to rely on the Statute of Frauds. Phelps v. McCaw, 210 Mo. App. 514.

*E. L. Burton* and *Goodwin Creason* for respondents.

(1) There was no writing signed by either of the respondents or any other person by them thereto law-fully authorized, whereby they, or either of them, agreed to answer to the plaintiff for the debt, default or miscar-

riage of Fidelity Fuel Company. Therefore the Statute of Frauds and decisions of appellate courts of this State bar any recovery by plaintiff from respondents for any debt of the Fidelity Fuel Company owing to the plaintiff. Sec. 2169, R. S. 1919; Miller v. Baking Co., 53 Mo. App. 433; Hoeberle v. O'Day, 61 Mo. App. 393; Mueller v. Woodson, 198 S. W. 1315; Dierks Lumber Co. v. Duncan Lumber Co., 234 S. W. 364. (2) There was no contract written or oral whereby respondents agreed to guarantee that the Fidelity Fuel Company would pay the royalties under its lease agreement with the plaintiff. The most strained construction of the letters in evidence, and relied upon by plaintiff for its cause of action, is that appellant made a written proposal to respondents, which, to bind respondents, must be accepted in writing without modification. This was not done. Authorities above. (3) The letters relied upon by plaintiff for its claim against the respondents are signed, one by John Mayer and the other by Mayer Coal Company, John Mayer. Taken and construed together with the lease by Fidelity Fuel Company to the men of Fidelity and the sales contract, both referred to in these letters, show conclusively that they were written for and on behalf of Fidelity Fuel Company, and not for or on behalf of John Mayer or Mayer Coal Company. (4) In order to bind the makers of a proposition and conclude the contract, the acceptance by the other party must be unconditional, unqualified, without addition or variation. 1 Parsons on Contracts, 404-407; Patton v. Rucker, 29 Tex. 408; Gulfport Cotton Oil Co. v. Reneau, 94 Miss. 904; Smith on Law of Fraud, sec. 319; Miller v. Baking Co., 53 Mo. App. 433; Arky v. Comm. Co., 185 Mo. App. 250. (5) Assuming for argument's sake (a fact which we deny) that respondents contracted to pay the plaintiff the amount of the royalties owing to plaintiff by Fidelity Fuel Company, yet plaintiff cannot recover from respondents because it has sued and procured a judgment against said Fidelity Fuel Company for the same debt. Hoeberle v. O'Day, 61 Mo. App. 390; Mueller v.

Woodson, 198 S. W. 1134; Meegan v. Surety Co., 193 S. W. 899; Dierks Lumber Co. v. Duncan Shingle Co., 234 S. W. 362.

GRAVES, J.—The opinion in this case should be read in connection with the opinion in Sebastian County Coal & Mining Company v. Fidelity Fuel Company, Appellant, *infra*, page 158. Both appeals here arise out of the same record and trial *nisi*. In fact one appeal is from one portion of a single judgment *nisi*, and the other appeal is from another portion of such judgment. The facts involved as to the two appeals are so different upon vital issues, that two separate opinions are required. In the appeal of the Fidelity Fuel Company, we have outlined the general and common facts. So to that opinion we (for brevity) refer. In the instant case, being our Number 24017, an appeal by the plaintiff is from that portion of the judgment of the circuit court by which it was adjudged that neither defendant John Mayer, nor defendant Mayer Coal Company, was liable for the defaults of the Fidelity Fuel Company, in relation to its lease from the plaintiff, Sebastian County Coal & Mining Company. It is sought to hold John Mayer and Mayer Coal Company, as guarantors for the Fidelity Fuel Company under the lease fully discussed in the Fidelity Fuel Company appeal. In this case the defendants Mayer and Mayer Coal Company, by answer plead the original lease, and subsequent agreements. In the other opinion we spoke of a sub-lease by Fidelity Fuel Company to its miners at Mine No. 10, which was assented to by the plaintiff. In the petition therein set out it is claimed that the assent to such sub-lease was given on the understanding that John Mayer and the Mayer Coal Company would guarantee to plaintiff the full performance of the original lease, and the subsequent agreement reducing the minimum quarterly rents, or royalties. Learned counsel for appellant in this appeal, in their statement say:

"This is an action to recover rentals (sometimes called minimum royalties) and taxes due the plaintiff company under the terms of a written lease originally made between the plaintiff's predecessors in interest and defendant, the Fidelity Fuel Company. The defendants, John Mayer and Mayer Coal Company, were joined because, being interested in the Fidelity Fuel Company, they secured the plaintiff's written consent (as required by the lease) to an assignment of the lease to a certain organization of miners who were working for them. *This assignment was only consented to and granted by the plaintiff company upon the understanding that John Mayer and the Mayer Coal Company should be responsible to the plaintiff for the faithful performance of the lease,* which understanding we contend was covered by certain correspondence passing between the parties and offered in evidence.

"Under the pleadings as they stood at the time the case was tried and the evidence, the plaintiff was entitled to and did have judgment against the Fidelity Fuel Company. John Mayer and the Mayer Coal Company contended that any agreement on their part to pay the rentals and taxes was within the Statute of Frauds and that there was no written note or memorandum such as was required to satisfy the statute. The trial court entered judgment in favor of John Mayer and the Mayer Coal Company, and it is from this judgment that the plaintiff has appealed. The Fidelity Fuel Company appealed from the judgment against it."

In the answer of John Mayer, it is admitted that he had acquired a majority of the stock of the Fidelity Fuel Company, and his answer was adopted by the Mayer Coal Company. This was before the letters upon which plaintiff relies to hold John Mayer and Mayer Coal Company. The oral testimony sheds no light upon the alleged guaranty. If there was such, it must appear from the written correspondence. We shall set out the letters in regular order. The first letter is of date Au-

gust 9, 1915, and appears to be in confirmance of a talk had with Mr. A. W. Lefeber, who had control of the coal matters (so far as the lease was concerned) of the Sebastian County Coal & Mining Company.    This letter reads:

"Kansas City, Mo. August 9th, 1915.

"Leasing of Fidelity mine of Fidelity, Ark.

"A. W. Lefeber, V. P. & T. M.,
"Midland Valley Ry. Co.,
"Muskogee, Oklahoma.

"Dear Sir:·
        "Confirming verbal conversation with you at Muskogee, wish to say that we desired to lease the above property to the men working for us at Fidelity—the lease to be under our supervision, protecting in every way the interests of the Cherokee Construction Company and the Midland Valley Railroad Company.
        "The following Tuesday I met your Mr. Gallager and showed him a copy of the lease that we had prepared, which met the approval of the man, and to which lease he found no objection.
        "I promised to confirm my conversation with you by letter, but was detained at the mines working out the details of the arrangements, hence delay.

        "Trusting this meets your approval, I am,

"JOHN MAYER."

To this letter there was a reply which reads:

"Muskogee, Oklahoma, August 12, 1915.

File 312-7

"Mr. John Mayer,
"323 Sheidley Bldg.
"Kansas City, Missouri.

"Dear Sir:

·    "I acknowledge receipt of yours of August 9, in reference to you or the Mayer Coal Company making a working contract with the Miners at your Fidelity Mine, and asking our approval thereof, all as provided for in the lease between Fidelity Fuel Company and Cherokee Construction Company of date January 1, 1909.
        "In reply thereto I wish to say it is agreeable to the Sebastian County Coal & Mining Company and the Midland Valley Railroad Company for you to make such working contract as mentioned, you and the Mayer Coal Company being responsible to the Sebastian County Coal & Mining Company and the Midland Valley Railroad Company for the faithful performance of the original contract above referred to; but we would like to ask, as personally stated, that copy of such contract be sent to us to be attached to

·original lease. If this is not the understanding, please advise. Not hearing from you, this correspondence will be attached to and as a part of contract first above referred to.

"Yours truly,

"A. W. LEFEBER."

## To this letter was sent the following answer:

"Kansas City, Mo., August 16, 1915.

"Leasing of Fidelity Mine No. 10 to the men.

"A. W. Lefeber, C. P. & T. M.,
"Midland Valley Railroad Co.,
"Muskogee, Oklahoma.

"Dear Sir:

"Answering your favor of August 12, 1915, your file 312-7, herewith we hand you copy of a lease that we made with these people together with their Committee's acceptance of same. This is complete except signatures and exhibit—being copy of your lease which we did not think it was necessary to make, as it is a complete copy of your lease with The Fidelity Fuel Company.

"This should be attached to your original lease, which would make it complete.

"You will note this lease calls for a royalty basis, which our attorneys advise us is the way to draw this. We have another sale contract of the entire coal to the Mayer Coal Company, which is separate and distinct from this lease, in order that it will not get them tangled up legally and complicate matters. This sale contract is just for the sale of the output of coal after they have paid the royalty under lease. Our attorneys went into this quite carefully, and advised that this was the proper way to do to protect ourselves and the Midland Valley lease from any legal technicalities that might be raised at any time.

"The men are now operating the property, and it looks as though they are going to get along in good shape, and that we will be able to do something with it, which we were not heretofore able to do.

"Yours truly,

"THE MAYER COAL COMPANY,

"JOHN MAYER."

## On September 7, 1915, we have the following letter:

"Mr. John Mayer,
"323 Sheidley Building,
"Kansas City, Missouri.

"Dear Sir:

"I have yours of August 16th, in reference to operation of the property heretofore leased to the Fidelity Fuel Company, and

understand therefrom the terms stated in our letter of August 12, are accepted; and these three letters have been attached to as modifying and making a part of the original lease between the Fidelity Fuel Company and the Cherokee Construction Company dated January 1, 1909.

"Yours truly, A. W. Lefeber."

The foregoing outlines in a general way this case. Details are left to the opinion.

I. The record before us does not show the direct relationship between John Mayer and the Mayer Coal Company. The letter heads upon which John Mayer wrote has the following heading:

"Address all Communications to the Company.
"The Mayer Coal Company.
"Coal Operator.
"General Offices: 323-324 Sheidley Building Cor. 9th & Main. Local and Long Distance Phones Main 3092.
"Producers of the Famous 'Mayer-Fidelity' Coal, Our Specialty 'Katy Cherokee' and 'Greenwood Semi-Anthracite.'
"Mines in Southern Kansas and Arkansas.
"Shipments *via* all roads.
"Wholesalers: Anthracite Semi-Anthracite Smithing Shock Coals Cherokee All Grades of Domestic and Steam Coals.
"Mine Weights govern all shipments.
"All sales subject to conditions of acceptance of order."

This was the letter paper upon which John Mayer wrote the letter of August 9, 1915, and all subsequent letters. All letters from the other side were addressed to the general offices of Mayer Coal Company, 323 Sheidley Building. All replies came from that office. In the letter of August 16, 1915, we find two signatures, i. e. "The Mayer Coal Company, John Mayer." This was in answer to a letter addressed to John Mayer, at the general offices of the Mayer Coal Company. The law will not presume an unlawful act, and therefore we must conclude that the signature of this letter of date August

16th, as above set out, by ''The Mayer Coal Company'' was by authority of that company. The law will not presume an unlawful and illegal act. But beyond this situation lies the fact, that throughout this record there is no claim that this letter was not rightfully signed by the Mayer Coal Company. In other words, there is no denial of its authenticity. Respondents' contentions are upon different grounds, which we will note later.

II.   In the brief of respondents the admission as to ownership of stock in Fidelity Fuel Company is a little broader than what we have quoted, supra. This admission reads: ''The respondents (John Mayer and the Mayer Coal Company) while said lease was in force acquired a majority of the capital stock of the Fidelity Fuel Company.'' Learned counsel then go on and say:

<span style="float:left">Extraneous Evidence.</span>

''The Fidelity Fuel Company in July, 1915, sub-leased this mine, which was in Sebastian County, Arkansas, to the men of Fidelity in said county.

''The plaintiff, appellant, claims that by virtue of some correspondence respondents John Mayer and Mayer Coal Company for a valuable consideration, agreed to be responsible to appellant for the faithful performance of the original lease to Fidelity Fuel Company, including the royalties to be paid under the original lease by the Fidelity Fuel Company to the appellant. The first of the letters relied upon by appellant is plaintiff's Exhibit 9, being a letter addressed to A. W. Lefeber, V. P. and T. M. Midland Valley Railway Company, and signed John Mayer. Referring to a previous conversation between Mayer and Lefeber, the letter states:

'' 'We desire to lease the above property to the men working for us at Fidelity—the lease to be under our supervision, protecting in every way the interests of the Cherokee Construction Company and the Midland Valley Railroad Company.' ''

The other letters, which we have set out in full, are then outlined. Going to the points and authorities

(points one and two), the point raised is that there was no instrument in writing, by which these two respondents "agreed to answer to the plaintiff for the debt, default or miscarriage of the Fidelity Fuel Company." They claim that the letters signed by John Mayer and by the Mayer Coal Company, were written in behalf of the Fidelity Fuel Company, and not in behalf of John Mayer, and the Mayer Coal Company. There is no contention that the letter signed by both John Mayer and the Mayer Coal Company was without the authority of the Mayer Coal Company. John Mayer could not deny his signature to such letter, nor that he was not bound by the letter, whatever the meaning of the letter is construed to be. The Mayer Coal Company in no way denies that such letter is as much its letter, as it is the letter of John Mayer. We mean that there is no denial of the authenticity of the letter so far as either John Mayer or the Mayer Coal Company is concerned. From all of it follows that (taking all these letters as they appear) if the letters suffice to show a guaranty of the faithful performance of the lease by the Fidelity Fuel Company, in consideration of the consent of the plaintiff to the lease to the minors of Mine No. 10, then these parties are liable as guarantors, as they are sued by the terms of the petition, fully set out in the case of Sebastian County Coal & Mining Co. v. Fidelity Fuel Co., mentioned supra. If the letters do not show a contract of guaranty as stated aforesaid, then these two defendants were properly dealt with by the trial court. This whole case therefore turns upon a proper construction of these letters, considering with them the relationship of the parties concerned. If the letters are doubtful or dubious in meaning then no rule is better settled in this State, than the one which says we can go to extraneous matters to determine the meaning. Where one vouches for the debt or default of another, such must be in writing. Appellant does not claim contra. What it claims is, that these letters, when given the construction which the surrounding circumstances demand should be given, there

is a contract in writing which is binding upon these two defendants. So, after all is said, this particular appeal turns upon the construction to be given these letters. Of this in paragraphs to follow.

III.   We have indicated that the obligations of these two defendants must appear from this correspondence. But, if the correspondence is dubious in language, then the surrounding circumstances (extraneous evidence) may be considered to get the real intent of the parties. We do not agree with learned counsel for respondent when they claim that these letters refer only to things to be done by the Fidelity Fuel Company.

*Words of Guaranty.*

The letter signed by John Mayer of August 9th confirms, or purports to confirm, an oral understanding. This letter is not specific and definite as to just what is meant by the clause "protecting in every way the interests of the Cherokee Construction Company and the Midland Valley Railroad Company." These were the original lessors, and their rights passed to plaintiff. It is fair to presume that one of the things to be protected was the minimum royalty, or rent to be paid under that lease. But Mr. Lefeber did not leave the matter in doubt. He (being the representative of plaintiff) writes the letter of August 12th, acknowledging the receipt of the letter of August 9th, saying: "In reply thereto I wish to say it is agreeable to the Sebastian County Coal & Mining Company and the Midland Valley Railroad Company for you to make such working contract as mentioned, you [John Mayer] and the Mayer Coal Company being responsible to the Sebastian County Coal & Mining Company and the Midland Valley Railroad Company for the faithful performance of the original contract above referred to." The contract was the lease calling for the payment of minimum quarterly royalties or rents. These he expected the said Mayer and Mayer Coal Company to faithfully perform and to become responsible therefor.

The letter also asked for a copy of the lease to the miners of Mine No. 10, and then concludes with these sentences: "If this is not the understanding, please advise. Not hearing from you, this correspondence will be attached to and as a part of the contract first above referred to." Note the letter not only gives the version of the contract, as understood by plaintiff, through its representative Mr. Lefeber, but it requests that a copy of the lease to the miners be sent to it. In the August 16th letter both John Mayer and Mayer Coal Company acknowledge the receipt of the letter of August 12th, and comply with the request as to copy of the miners' lease, and send such lease to plaintiff, and saying: "This should be attached to your original lease, which would make it complete." This signed letter amounts to an acceptance of the terms stated in the letter of August 12, 1915, to which it was an answer. That letter of August 12th called for a guarantee upon the part of Mayer and Mayer Coal Company. They knew the terms fixed by the letter, which was an answer to one written by John Mayer on the 9th of August. They understood that the letter of the 12th called for the signatures of both John Mayer and Mayer Coal Company, and in response to that both signed the letter of August 16, 1915. To our minds this letter was an acceptance of the terms plainly stated in the letter of the 12th, and the two constitute a written guarantee of John Mayer and Mayer Coal Company to stand good for the quarterly payment of rents under the lease. What is said about Mayer Coal Company having a selling contract with the miners of Mine No. 10 neither adds to nor takes from the force of this acceptance, in writing, of the terms.

By the letter of September 7th, Lefeber says that he understands the letter of the 16th to be an acceptance of the terms stated in the letter of the 12th. Nothing further is said by either Mayer or the Mayer Coal Company. Their silence acquiesces in the construction placed upon their own written and signed document. Had their construction of the two letters (August 12th and 16th)

been different to that of Lefeber in his letter of September 7th, they would have promptly said so. At that time there is no doubt that these respondents understood from their correspondence, supra, that they were guarantors of the payment of the rents sued for in this case. They owned the controlling interest in the Fidelity Fuel Company, and were anxious to sell the coal from this mine. All things considered we think that these two letters, constitute a written agreement upon the part of John Mayer and Mayer Coal Company to pay these rents, if not paid by others.

It follows that the judgment in favor of Jahn Mayer and Mayer Coal Company is reversed, and the cause is remanded with directions to the circuit court to so modify its judgment as to make them liable, along with the Fidelity Fuel Company, for the amount adjudged to be due plaintiff. Further, that the judgment so entered pursuant to these directions be made to bear interest as of date of the original judgment. It is so ordered. All concur, except *Atwood, J.,* not sitting.