446

STATE OF MISSOURI, AT THE RELATION OF LADELLE McCAIN, B. E. TODD, GEORGE REESE, HARRY HARTWICK, CARL CAMERON, ANDREW CAMERON, G. V. ELLIS, JAMES PLUNKETT, LEO SULLIVAN, CARL KINDRICK, MART REECE, EDWARD TURNER, LEON BAILEY, CLYDE BRANHAM, O. L. HARTWICK, LAVERNE HATTON, TOM LINDLEY, E. H. EDWARDS, J. W. HOLMES, DAYTON FRANKS, W. L. TARKINGTON, W. L. ROLLINS, JIM DUVALL, GENE WILLIAMS, MITCHELL CHAMBERLIN, ROY JACKSON, AND OBIE COSSEY, RELATORS, v. O. H. ACOM, W. N. HAWKINS, O. A. KNIGHT, B. T. OWENS, RAY DILLARD, J. I. BURLESON, MEMBERS OF THE BOARD OF EDUCATION, AND E. E. WISENER, SECRETARY OF THE BOARD OF EDUCATION OF WARDELL CONSOLIDATED SCHOOL DISTRICT No. 3, PEMISCOT COUNTY, MISSOURI, RESPONDENTS.—236 SW (2) 749.

Springfield Court of Appeals. February 20, 1951.

*Jones & Jones, Langdon R. Jones, Robert H. Jones* for Appellants.

*John M. Dalton, Harold B. Treasure, Clarence A. Powell* for Respondents.

448

BLAIR, J.—In the briefs, the several attorneys agree that, to avoid confusion, the parties may generally be designated in this Court as they were in the Circuit Court.

The appellate jurisdiction of this Court is not challenged. It is settled by what Judge Tipton, of the Supreme Court, has said in Hydesburg Common School District of Ralls County v. Rensselaer Common School District of Ralls County, 214 S. W. (2d) 4.

The relators below are residents in and qualified voters of Peach Orchard Common School District No. 50, in Pemiscot County. Relators below desired to have some of the territory of the Wardell Consolidated School District, and asked that it be attached to the Peach Orchard Common School District, and so voted at the election held in that school district.

Respondents below having indicated their opposition to such proposition, a mandamus proceeding was instituted in the Circuit Court of Pemiscot County, March 18, 1950, to compel the Clerk of the Wardell Consolidated School District to give notice of an election to be held therein on April 4, 1950, the date of the annual meeting. The Circuit Court of Pemiscot County issued an alternative writ of mandamus to compel such action. Thereupon, the respondents, the clerk and members of the Wardell Consolidated School District, took a change of venue and the case was sent to the Circuit Court of Butler County. The files in the case reached Butler County too late for the giving of 15 days' notice, before April 4, 1950.

In the Circuit Court of Butler County, the respondents asked dismissal of the case, on the ground that the question involved had become moot. On May 22, 1950, the Circuit Court of Butler County issued what was designated as a supplemental alternative writ of mandamus, commanding respondents to hold a meeting of the Wardell

Consolidated School District within 20 days thereafter, and to call an election within that district within 20 days, after the meeting of the Board on April 4, 1950.

On May 29, 1950, respondents asked, and the Circuit Court of Butler County refused, a dismissal of such supplemental alternative writ of mandamus. Respondents have appealed to this Court and make five assignments of error. Such assignments relate to the power of the Circuit Court of Butler County to issue its supplemental alternative writ of mandamus, when it did, and to make such writ permanent. The sole questions in this case, as we see them, are the power of the Circuit Court of Butler County to issue its supplemental alternative writ of mandamus, to refuse to dismiss the case as moot and to make its ancillary writ of mandamus permanent.

Assignment V of appellants' brief in this Court states the real question in this case, as follows:

"The court erred in overruling Respondents' motion to set aside the orders of the court, overruling Respondents' motions to dismiss, to strike the supplemental petition for writ of mandamus and to quash the supplemental alternative writ of mandamus."

In their brief, relators, respondents here, cite Sections 10410 and 10485, of the Statutes of Missouri for 1939, and three cases on the proposition that the law authorizes a change of boundaries, in the manner sought by relators. There is no question about such legal proposition. Those sections of the statute and the cases cited have been examined by us and they so hold.

It was the plain duty of the secretary of the Wardell Consolidated School District to issue and post notices for the question to be decided at the election on April 4, 1950. He did not issue such notices and an alternative writ of mandamus, to compel such action, was issued by the Circuit Court of Pemiscot County.

As we understand this case, there is really only one question in it. That question is the power of the Circuit Court of Butler County to issue a supplemental alternative writ of mandamus, at the time it issued such writ. In paragraph IV (a), relators below cite several sections of the New Code of Civil Procedure, and some cases, which they assert authorized the Circuit Court of Butler County to issue a supplemental alternative writ of mandamus, at the time and under the conditions prevailing, when it issued such writ.

The case of State ex rel. Harrison, et al. v. Hill, et al. 249 S. W. 693, 211 Mo. App. 623, cited by them referred to the power of the St. Louis Court of Appeals to issue a writ of mandamus to compel action by the Board of Supervisors of a Levee District in Clark County. The power of the St. Louis Court of Appeals to issue a supplemental writ of mandamus was not discussed and that question was not involved in the case. The sole question there, was the *duty* of the Board of Supervisors of the Levee District to call an election at all. The Board

claimed that the calling of such an election was discretionary with it. All of the changes, made by the Court, were in the alternative writ by· changing the date of the election to a date, agreed upon by the parties, and merely the power of the Court to make such an amendment in the alternative writ, under such circumstances, was challenged.

The case of State ex rel. Byrd v. Knott, et al. 75 S. W. (2d) 86, was written by Judge Smith, of this Court. The timeliness of the amendment to the supplemental alternative writ of mandamus was not an issue in that case, and was not discussed. After holding that mandamus was the proper remedy, under the circumstances of that case, the question of a subsequent amendment of the writ was not discussed.

The case of State ex rel. Hart, et al. v. City of St. Louis, et al. 356 No. 820, 204 S. W. (2d) 234, 1. c. 240, was an original proceeding by mandamus in the Supreme Court of Missouri. That case involved the right and duty of the mayor, the comptroller, and others, to issue warrants for the salaries of relators. The case was written by Judge Tipton in 1947. The power of the Supreme Court to issue a supplemental alternative writ of mandamus, as issued by the trial court, was not discussed.

State ex rel. Porter v. Hudson, et al. 226 Mo. 239, 1. c. 264, 126 S. W. 733, cited by relators, was an appeal to the Supreme Court of Missouri and was decided in an opinion written by Judge Lamm, over the dissents of some other judges of that Court. Relators were therein held not to be entitled to the writ of mandamus at all, and the judgment of the lower court, granting such writ, was reversed.

In the Circuit Court of Butler County, the respondents below asked dismissal of the case on the ground that the question involved had become moot. It was their contention that, since the date mentioned in the writ of mandamus, towit, '' * * 15 days prior to the time of the annual meeting,'' on April 4, 1950, had passed, the question was moot, and the trial court, which received the case, after the change of venue, had no power to issue an alternative writ of mandamus.

Section 10419, R. S. Mo. 1939, is too long to be quoted in full, but the language used in that section demands close study. It requires· the clerk of the school district, represented by respondents below, ''* * upon the reception of a petition desiring such change, and signed by ten qualified voters residing in any district affected thereby, to post a notice of such desired change in at least five public places in each district interested fifteen days prior to the time of the annual meeting.'' That section provides for another meeting in the school district, when it said: ''or notice for same length of time published in all the newspapers of the district; and the voters, when assembled, shall decide such question by a majority vote of those who vote upon such proposition.''

The statute, as a whole, cannot be carefully studied without coming to the conclusion that an election, of the sort desired by relators below, can be held at a time, other than the date of the annual meeting.

It is only when the assent is not given at the annual meeting that the question is referred to the county superintendent for decision. That section provides that, when one or more of the school districts affected vote at that time in favor of the change of boundaries, and one or more of the school districts vote against such change of boundaries, then the propriety of such change is referred to the county superintendent, under such circumstances only, and in the following language:

"* * * the matter may be referred to the county superintendent of public schools; and upon such appeal being filed with him, in writing, within five days after the annual meeting, he shall appoint four disinterested men, resident taxpayers of the county, who, together with himself, shall constitute a board of arbitration, whose duty is shall be to consider the necessity for such proposed change and render a decision thereon, which decision shall be final.''

The plain meaning of Section 10410, R. S. 1939, (now Sec. 165.170, R. S. Mo. 1949,) is that a change of boundaries can be effected at other times than at the annual meetings of the affected districts. If this were not true, the Legislature would have done the foolish thing of putting it in the power of unwilling school directors to take advantage of their own wrongs by merely waiting until the requirement of fifteen days' notice had passed, and then taking a change of venue to some other court, where such fifteen days' notice could not be given before the annual meeting was to be held, or by taking other dilatory steps. The mere assertion of such a proposition suggests the necessity of an early amendment of that section, if such amendment is really necessary, as appellants contend.

We have not found a school case at all like this case, in the essential facts involved; but appellate courts of other states have passed upon the principle involved in this case, when they decided those cases.

The Supreme Court of Arkansas, in the case of Wright, et al. v. Ward, et al. 280 S. W. 369, 170 Ark. 464, held that, where the time for holding a referendum election was not fixed by the statute, such statute was self-enforcing, and that the date of holding such election was merely suggestive. That court held that it was entirely within the power of the council afterward to order the election, name the date of the election, and provide for the machinery required at such election, and that the trial court had the right to compel the defendants to call such an election, although the date originally suggested had passed.

In Yett, Mayor, et al. v. Cook, 274 S. W. 199, the Court of Civil Appeals of Texas, said:

"The judgment sought to be affirmed commanded the respondents to call the election on the date described by the charter. They superseded the judgment, and thereby prevented its execution on that date. They now contend that, because the date of the

election fixed by the charter and judgment has passed, the relief sought and awarded by the proceeding is no longer available, and the case therefore presents only moot questions. If that contention should be sustained, the respondents or any other municipal officials should desire to perpetuate themselves in office, they could successfully accomplish that end by the procedure adopted by respondents in this case; that is, they could refuse to call the regular election as required by the charter, and, if mandamus issued commanding them to call the election for that date, supersede the mandamus judgment, and by doing nothing further in the prosecution of the appeal, and by holding over in office under the general statute until their successors qualified, their end would be accomplished. But the law will not sanction such procedure. If the essence of the relief sought and granted in this case is an election, then the affirmance of that judgment carries with it the continuing authority of the trial court to execute it just as any other judgment, which has been superseded and affirmed. It would seem a peculiar anomaly in the law if a trial court could not enforce its lawful judgments.''

Also see Young v. State, et al. (Texas) 87 S. W. (2d) 520.

Other states have passed on the same proposition, but on facts quite different from those involved in this case. See Board of Commissioners v. Handley, (Fla.) 59 Southern, 14, and State v. Buckhannon, (W. Va.) 123 S. E. 182.

An examination of those cases discloses that the respective appellate courts felt that the trial court could not be defeated through the taking by the wrongdoer of a change of venue, or by taking steps looking toward an appeal, and that the trial court still had the right to fix a later date for the holding of the particular election.

The general rule is laid down in 38 Corpus Juris, page 271, as follows:

''Where an officer or board is under a clear legal ministerial duty to give notice of and order an election, mandamus is an appropriate remedy to compel the performance of that duty, and this, it is held, although the time designated by law for such election has passed, or although owing to the default of the election officers it will not be possible to give the full number of days' notice of the election required by statute and to hold the election within the designated time. On the other hand the writ does not lie where the officer or board is vested with discretion in the matter of ordering an election, or in fixing the date thereof, unless this discretion has been exercised arbitrarily or fraudulently.''

That this is still the general rule is shown by pages 233 and 234, of 55 C. J. S.

But we are satisfied that we should go further, and, while we approve the action of the change of venue court in this case in fixing a later

date for the holding òf the election, and·feel that such trial court may still fix a later date for the holding of the election, applied for by·relators, and, since the subsequent date fixed by the change of venue court has also passed, the order of this court should be affirmance of the order and judgment of the change of venue court; but that the cause should be remanded to that court, with directions to it to fix another date for the holding of such election, with all of the necessary orders for notice, as required by Section 10410, R. S. Mo. 1939, (now Sec. 165.170, R. S. Mo. 1949,) together with the machinery for the holding of such election. It is so ordered. *Vandeventer, P. J.*, and *McDowell, J.*, concur.