The STATE of Missouri ex rel. Raymond DAHM et al., Relators,

v.

Johnny GOODIN et al., Members of the Board of Directors, Reorganized School District, R–V, Mercer County, Missouri, Respondents.

No. 22490.

Kansas City Court of Appeals.

Missouri.

Nov. 5, 1956.

Noland M. Chapman, Don Chapman, Noland M. Chapman, Jr., Don Chapman, Jr., Chillicothe, for relators.

J. Morgan Donelson, A. B. Walker, Princeton, for respondents.

FRED H. MAUGHMER, Special Judge.

Original proceeding in Mandamus brought under Sec. 4, Art. 5, Const. of Missouri, V.A.M.S.: It was stipulated that Reorganized School District R–II of Grundy County, Missouri, and Reorganized School District R–V of Mercer County, Missouri, each is a legally existing school district and organized under the provisions of Secs. 165.657 to 165.707, RSMo 1949, as amended V.A.M.S.; that Relators are residents, qualified voters, and taxpayers of R–V, Mercer County; that respondents are the duly elected, qualified, and acting members of the Board of Directors of R–V, Mercer County, the respondent, C. E. Hammond, being Secretary of the Board; that on February 18, 1956, a petition hereafter referred to as First Petition, signed by more than ten qualified voters and taxpayers of R–V, Mercer County, was filed with the Boards of Directors of R–V, Mercer County, and the Board of R–II, Grundy County, reciting their desire for change of boundary and requesting that notice be published, calling an election thereon at the annual meeting to be held in April, 1956. The petition specifically describes certain lands, then a part of R–II, Grundy County, which it was proposed to include in R–V, Mercer County. This territory is enclosed in blue lines on the plat attached to the stipulation; that on February 23, 1956, a second petition signed by more then ten qualified voters and taxpayers of R–V, Mercer County, was filed with the Boards of Directors of R–V, Mercer County, and R–II, Grundy County, reciting their desire for change of boundary and requesting that notice be published, calling an election thereon at the 1956 annual meeting. This second petition specifically described certain lands, then a part of R–V, Mercer County, which it was proposed to include in R–II, Grundy County. This territory is enclosed in red lines on the plat attached to the stipulation.

The Board of Education of R–II, Grundy County, and its Secretary posted the notices and called the election on both proposals for April 3, 1956. The Board of Education, R–V, Mercer County, called an election for April 3, 1956, based upon the first petition, but has refused to call an election on the proposition proposed in the second petition. The territory or area involved in each of these proposals is different. There is no overlapping of area, in whole or in part. However, the boundary line on one side of each proposed area to be attached is the same.

At the election April 3, 1956, a majority of the voters of R–V, Mercer County, voted in favor of the first proposal, that is, to detach the territory from R–II, Grundy County, and attach it to R–V, Mercer County. R–II, Grundy County, cast a majority of its votes against this proposal. An appeal was duly taken to the County Board of Education. The Board of Arbitration provided in such instances rendered a decision against the proposal and left the boundaries as they were.

At the annual election April 3, 1956, a majority of the R–II, Grundy County, voters approved the second proposal as petitioned under date of February 23, 1956. This Writ is sought to compel respondents in their official capacity as the Board of Education for R–V, Mercer County, to

honor the petition, publish notices and hold an election on the second petition.

Relators contend that upon the filing of the second petition, dated February 23, 1956, respondents, as Secretary and members of the R–V Mercer County Board of Education, had the ministerial duty of posting the notices, and calling the election for April 3, 1956, and that Mandamus is the remedy to secure compliance. Respondents say that since a boundary line change respecting the same two school districts and with one common boundary line was involved in each petition, jurisdiction attached to the petition filed first and the Board of Education could not validly act as to the second petition. Respondents also assert that defeat for Proposition No. 1 does not revive Proposition No. 2, and, thirdly, they say, the proposal is really one to annex rather than to change a boundary line.

■ The Constitution of Missouri, Sec. 4, Art. 5, vests original jurisdiction for remedial writs in all appellate courts. Since a school district is not a "political subdivision" of the State, this suit is properly lodged in the Court of Appeals. Hydesburg Common School District of Ralls County, v. Rensselaer Common School District of Ralls County, Mo., 214 S.W.2d 4. State, ex rel. McCain, v. Acom, Mo.App., 236 S. W.2d 749.

Section 165.294, R.S.Mo., as amended 1955, V.A.M.S., clearly authorizes changes in boundaries. It sets forth the procedure to be followed in order to bring the matter before the voters. Ten qualified voters and taxpayers may petition the District Boards of Education—all districts affected where lands lie in more than one county. Thereupon, the Secretaries of the Boards shall post the notices for election. The statute provides that the question shall be decided by a majority vote in each district voting. If one or more districts vote against the change, then an appeal may be lodged with the county boards concerned. A County Board of Arbitration to determine the issue is then provided for. In our particular case the occurrence of the statutory preliminary facts prerequisite for the calling of the election were stipulated.

■ Respondents say this is an attempt to annex rather than to change a boundary. They cite Sec. 165.300, RSMo, 1949, as amended, V.A.M.S. That section is not applicable, possibly for many reasons, certainly for the reason that the entire consolidated district R–V was not involved. Respondents say that the receipt by respondents of the first petition for change of boundary, *involving in part the same boundary line, but not any part of the same area,* gave to the first petition exclusive jurisdiction. They say, further, that Petition No. 1 having finally failed consummation, does not revive No. 2.

In State ex Inf. Goodman, ex rel. Crewdson v. Smith, 331 Mo. 211, 53 S.W.2d 271, 272, the Supreme Court said:

"It is a well-established principle of law that, when several separate authorities have concurrent jurisdiction of the same subject-matter, the one in which proceedings were first commenced has exclusive jurisdiction to the end of the controversy."

In State ex Inf. Taylor, ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762, 779 the same Court said:

"(1) Relator, by the institution of its prior proceedings on August 19, 1946 thereby acquired prior jurisdiction of the subject matter, and (2) relator thereby acquired the right to continue its proceedings to a conclusion, unimpaired by any effort whatever upon the part of respondent to annex any of the same area."

■ These cases, of course, declare the law as it is applied to those facts but in our case we do not have the same subject matter. Petition No. 1 sought to attach part of R–II, Grundy County, to R–V, Mer-

cer County. Petition No. 2 sought to attach part of R–V, Mercer County, to R–II, Grundy County. True, one of the four general boundary lines of the two tracts was a common boundary, but neither of the two areas overlapped. When our subject matter is land area, it cannot be said that either the area or the subject matter is the same simply because the tracts abut. If the subject matter or areas sought to be joined were the same, we might be presented with a different question. As was stated by the Springfield Court of Appeals in State ex rel. McCain v. Acom, 236 S.W. 2d 750:

"The law authorizes a change of boundaries, in the manner sought by relators. There is no question about such legal proposition. Those sections of the statute and the cases cited have been examined by us and they so hold."

■ The Writ must issue, we believe, directing respondent C. E. Hammond, Secretary, to post the notices for the election as contemplated, by the petition dated February 23, 1956, and must issue against all respondents as members of the Board of Education, R–V, Mercer County, to order the notices posted and do all things necessary for the holding of the election.

■ However, a new question is now posed. The April 3, 1956, annual election date has passed. In State ex rel McCain v. Acom, supra, it was held that a change of boundaries can be effected at other times than at the annual meetings. The Court said on page 752 of that Opinion:

"If this were not true, the Legislature would have done the foolish thing of putting it in the power of unwilling school directors to take advantage of their own wrongs by merely waiting until the requirement of fifteen days' notice had passed, and then taking a change of venue to some other court, where such fifteen days' notice could not be given before the annual meeting

was to be held or by taking other dilatory steps."

The Rule is also laid down in 55 C.J.S., Mandamus, § 142, pp. 233 and 234, as follows:

"Where an officer or board is under a clear ministerial duty to give notice of and order an election, or to perform any other specific act in connection with the calling of an election, mandamus is an appropriate remedy to compel the performance of that duty in the manner prescribed by law. The duty to call an election may be so enforced, it has been held, even though the time designated by law for such election has passed, particularly where such designation is ineffective as in violation of general provisions governing elections, or although the day of election asked for in the referendum petition has passed, or although owing to the default of the election officers it will not be possible to give the full number of days' notice of the election required by statute and to hold the election within the designated time."

■ Now, manifestly, this Court in the final weeks of 1956 cannot direct that an election be held on April 3, 1956, the date prayed for in Petition No. 2. Shall it be ordered held immediately after this Judgment becomes final or shall it be ordered held at the 1957 annual school election on the first Tuesday of April, 1957? We believe the Court should, in answering that question, exercise not only discretion but judgment.

■ We believe that a larger vote would likely be cast at a general than at a special election. We know that less additional expense would be incurred. This Court understands that the transfer of taxable real estate and personal property from one school district to another or from one road district to another, in the latter part of the calendar year, when the county as-

sessor, county clerk, and county collector have made up their books is very disruptive to those offices. We believe the Legislature understood this when it provided that these elections for change of boundary be held at the annual school elections. We do not rule that an election cannot be held at a different date. In fact, if this case had come here soon after the April 1956 election, we would order it held immediately, but considering all the facts, exercising judgment, and in view of the fact that the April 1957 election will soon be here, we therefore order and direct that respondents publish the proper notices, at least fifteen days prior to the 1957 annual school election, to be held on the first Tuesday in April 1957, and that the respondents fix that date for the holding of such election together with all necessary orders for notices and providing the machinery for the holding of such election.

DEW, P. J., and CAVE, J., concur.