STATE of Missouri ex rel. A. V. KUGLER, Estalene Kugler, S. Lunsford, Frances Lunsford, Carl Mohr, Louise Mohr, J. H. B. Mohr, Virgil Mohr, Rudolph Deitrich, Della Deitrich, Price Doctorman and Florence Doctorman, Respondents,

v.

W. M. TILLATSON, W. E. Shannon, John Adams, Maenard Egbert, Weldon Tague and Hubert Deitrich, as members of the Board of Education of Reorganized School District No. 3 of Scotland County, Missouri, Appellants.

No. 46558.

Supreme Court of Missouri

En Banc.

April 14, 1958.

Rehearing Denied and Opinion Modified
May 12, 1958.

Jayne & Jayne, Kirksville, for appellants.

L. F. Cottey, Lancaster, J. B. Smoot, Memphis, for respondents.

EAGER, Judge.

The appeal in this case was originally taken to this court, but the cause was transferred to the St. Louis Court of Appeals for lack of jurisdiction. 300 S.W.2d 517. The opinion of the Court of Appeals appears at 304 S.W.2d 485. Thereafter this court ordered the cause transferred, and it is now here as upon an original appeal.

The proceeding is one in mandamus to compel the directors of a reorganized school district to entertain relators' petition for a change of boundaries and for the detaching of certain described land from that district, and for the submission of the proposition to the voters of the district under § 165.294 (Laws 1955, p. 528, 1957 Cum.Supp.; all other statutory references will be to RSMo 1949 and V.A.M.S.). The trial court entered judgment for the relators and issued its peremptory writ. This appeal followed, so there was no submission to the voters at the April, 1956, annual meeting as directed, or since.

The area which relators (respondents here) seek to detach consists of 900 acres; it is now in Reorganized School District No. 3 of Scotland County; we shall, for convenience, refer to that district as "R-3 District." At the time of trial seven children of school age resided in that particular area, but five of these had never attended the R-3 schools. That district comprises about 50 square miles and it maintains a high school and an elementary school. The Wyaconda Consolidated School District No. 1 of Clark County (which we shall designate as "Wyaconda") adjoins the R-3 District and also adjoins the block of land owned by relators which they now seek to detach from R-3 and add to the Wyaconda District. There are approximately 165 children of school age in each district. Each of the districts in question is a "six-director" district within the meaning of § 165.-294. On March 8, 1956, a petition was served upon W. E. Shannon in his capacity as Clerk of the R-3 Board requesting the Board to submit the proposed change of boundaries to the voters of the District at the annual meeting on April 3, 1956. Mr. Shannon stated that he was Secretary of the Board, but we think the distinction is inconsequential. He was also a member of the Board. The requested change in the boundary was specified by detailed legal descriptions, to which no objection has been made. Twelve names were affixed to the petition as signers. Mr. Shannon knew these persons, knew that they were residents of his district, and thought that all of them were landowners. A similar,

if not identical, petition was simultaneously delivered to the Clerk of the Wyaconda District, signed, however, by different persons. The Board of the latter district accepted the petition, posted notices, and submitted the proposition to its voters, with a resulting approval of the proposed change of boundaries. Mr. Shannon, Clerk of the R-3 District, checked the descriptions, and he then had prepared and posted printed notices, both of the annual meeting and of the proposed change of boundaries (contained, respectively, on the left and right sides of the same card); the notices were posted on March 17, 1956; he also inserted identical notices in the "Gorin Argus," a weekly newspaper, on March 15, 1956. At some time after receiving the petition he or the President, Mr. Tillatson, consulted counsel and a meeting of the Board was held on March 19, 1956, after a lapse of eleven days. At some time prior to the meeting Mr. Shannon had determined to his own satisfaction that at last three of the signatures were "not genuine." At this meeting, the minutes of which appear in the transcript, the Board found that the petition was insufficient in that—(a) it was not signed by ten qualified voters; (b) it was addressed to the Clerk and not to the Board; and (c) it referred to a change of the boundary lines of the "Wyaconda" District. The Board disavowed the action of the Clerk, withdrew the newspaper publication, and (through the Clerk and President) obliterated that part of the notices referring to a change of boundaries by painting over it. Thus, no election was held.

The substantive question with which we are concerned here involves the "signature" of Sampson Lunsford on this petition; the Board found that his name and the name of "Mrs. Frances Lunsford" "were signed by the same person"; it made similar findings concerning certain other names, but these are immaterial; if Mr. Lunsford's name was validly affixed, the petition was undoubtedly presented by ten qualified voters and taxpayers, as required by § 165.-294. At the hearing in the trial court it was developed that Mr. Lunsford had directed his wife to sign his name to the petition when it was presented to him because he did not have his glasses at the time, and that she did sign his name in his presence; also, that the names of two of the other petitioners (as mentioned above) were affixed by their wives with the authority of their respective husbands, though under somewhat different circumstances. We realize that this information was not necessarily before the Board at its meeting, and will so consider the case.

■ We construe the opinion of the Court of Appeals as requiring the personal signature of every voter who desires to join in such a petition. It was that holding which primarily prompted this court to transfer the case. An inference might well be drawn here that Mr. Shannon was familiar with the signatures in question and knew or suspected that Mrs. Lunsford had affixed her husband's name; however, we need not and do not go that far. Generally, no particular mode or form of authority is necessary to create a valid agency. 2 C.J.S. Agency § 20; Noren v. American School of Osteopathy, 223 Mo.App. 278, 2 S.W.2d 215; Kaden v. Moon Motor Car Co., Mo.App., 26 S.W.2d 812. The authority may be conferred orally, except in certain specific instances where a writing is required, usually by statute. 2 C.J.S. Agency § 26, p. 1055. This court has held that oral authority was sufficient to empower an agent to make and file an affidavit of the nonpayment of a note secured by deed of trust, since no statute required such authority to be in writing. Murphy v. Milby, 344 Mo. 1080, 130 S.W.2d 518, 519. See also Leidy v. Taliaferro, Mo., 260 S.W.2d 504. For many other instances of valid oral authority see 2 C.J.S. Agency supra, § 26, pp. 1055–1056 and the various cases cited; and see De Mayo v. Cantley, Mo. App., 141 S.W.2d 248, holding valid an oral authorization to endorse a note. The execution of a document by one acting at the oral request of the principal and in his

presence has been considered by some courts as the equivalent of written authority, the writing being considered as the personal act of the principal. 2 C.J.S. Agency § 26, p. 1056. We need look no further into such authorities. Beyond all question the name of Mr. Lunsford was validly affixed to the petition under general law. Nor do we think that § 165.294 requires more. It provides that "ten qualified voters * * * may petition the district boards * * *"; specifically, it says nothing about personal signatures. There are, as the Court of Appeals states, other sections of that chapter which require petitions or notices "signed by" qualified voters (for instance, § 165.170; § 165.300; § 165.310); indeed, the former section governing changes of boundaries, § 165.170 (made applicable to all districts by § 165.-293), required a petition "signed by ten qualified voters." The omission of that requirement in the new section, and its continuing inclusion in other sections of the chapter, certainly does not indicate to us an intention to require personal signatures exclusively. We do not agree with the statement of the Court of Appeals to the effect that, in this instance, the voter, "should [which we construe as "must"] affix his signature himself." To so hold would invalidate a petition signed on behalf of a totally incapacitated person, and perhaps one signed under authority of a power of attorney. It is unnecessary to discuss any questions of "ratification" or "obligation," as mentioned by the Court of Appeals. We do not foreclose the application of our present ruling to the other sections of Chapter 165 requiring a petition or notice to be "signed" by the voters, but that question is not presented here and it is not decided.

 We will assume that the directors of District R-3 did not know all these facts when the petition was presented to and filed with its Clerk, and, further, that they did not actually know all the facts at the time of their meeting. We do hold that the presentation of this petition to Mr. Shannon in his official capacity was a presentation to the Board. The briefs present, pro and con, questions of the existence and extent, if any, of the Board's discretion in the premises; on the one hand that it had full discretion to determine the validity or invalidity of the petition, and that its action thereon in good faith is final and conclusive (citing State ex rel. Richardson v. Baldry, 331 Mo. 1006, 56 S.W.2d 67, and other cases); on the other, it is insisted that the Board had no real discretionary power, but only the ministerial duty of ordering the election (citing State ex rel. Gault v. Gill, 190 Mo. 79, 88 S.W. 628, 630; State ex rel. McCain v. Acom, Mo. App., 236 S.W.2d 749). None of the cases cited present the question which we have here. Assuming that a concededly valid petition is presented, then the duties of the Board are merely ministerial, namely, to post the notices and present the proposition to the voters. We cannot say, however, that the Board has no discretionary power whatever to determine the validity of a petition; for instance, only nine names might be affixed, one signer might be known to be a minor, or, of the Board's own knowledge, certain signers might be nonresidents of both districts involved. The question presented here, however, was a simple one, namely,—was Mr. Lunsford's name written either by him or with his actual authority? He was admittedly a qualified person. A most simple and casual inquiry would have brought forth the answer; at least one member of the Board knew the Lunsfords, and indeed knew all the other signers. There seems to have been considerable activity on the part of the Clerk, and perhaps other members, between the filing of the petition and the time of the meeting, but none of this was directed at getting this pertinent information. We hold that in acting without any inquiry whatever, even the slightest, and in thus finding that the signature was wholly void (and in practical effect, a forgery) the Board abused its discretion and acted arbitrarily. Either some inquiry should have been made

promptly or the Board, on informal and prompt notice, should have given Mr. and Mrs. Lunsford an opportunity to be heard on the subject. It cannot be said that the Board merely erred in a matter of law, for it made no investigation of the facts upon which such a determination could intelligently be made. We further note that there exists, generally, a presumption that acts have been performed in good faith and rightfully, as opposed to any presumption of fraud, misconduct or illegality. Bradshaw v. Metropolitan Life Ins. Co., Mo. App., 110 S.W.2d 834; Croghan v. Savings Trust Co., 231 Mo.App. 1161, 85 S.W.2d 239; State ex rel. Douglas v. Reynolds, 276 Mo. 688, 209 S.W. 100; Sebastian Coal & Mining Co. v. Mayer, 310 Mo. 104, 274 S.W. 770; 31 C.J.S. Evidence § 126.

In considering the application of our school laws we must remember the repeated and universal expressions of our courts to the effect that they are to be interpreted liberally, and that substantial compliance with the statutes is sufficient, for generally these laws are administered by laymen. State ex rel. School District No. 34 v. Begeman, 221 Mo.App. 257, 2 S. W.2d 110; State ex rel. Acom v. Hamlet, 363 Mo. 239, 250 S.W.2d 495; Reorganized District R IV v. Williams, Mo.App., 289 S.W.2d 126; School District No. 16 v. New London School District, 181 Mo.App. 583, 164 S.W. 688; State ex inf. Mansur ex rel. Fowler v. McKown, 315 Mo. 1336, 290 S.W. 123.

Appellants have briefed certain other supposed defects in the petition, as found by the Board. One is that it was addressed to the Clerk, rather than to the Board. In the first five lines of the body of the petition it requested the *"Board of Directors" and* the Clerk to take the suggested action. This objection is highly technical. See, by analogy, State ex inf. Mansur ex rel. Fowler v. McKown, 315 Mo. 1336, 290 S.W. 123. The Board also found the petition defective in that it proposed a change in the boundary line of the Wyaconda District, rather than that of the R–3 District. The boundary line was a common line, and it was accurately described by legal description; moreover, the petition requested that certain land, specifically described by legal description, be detached from the R–3 District and "be attached to and become a part of" the Wyaconda District. Under these circumstances no one, including the Board, could have been misled. See, generally: State ex inf. Kamp ex rel. Rodgers v. Pretended Consolidated School Dist. No. 1, Banc, 359 Mo. 639, 223 S.W.2d 484; State ex rel. School District No. 2 v. Gibson, 78 Mo.App. 170; and the cases heretofore cited concerning a liberal interpretation of the statutes. The point is also made by appellants that their plea in the return to the writ that the petition "was not called to their attention in time to physically permit" submission to the voters at the April, 1956, annual meeting, was a valid reason why the writ should not have issued. First, we may say that it is inconceivable that the members of this Board, in a strictly rural district, did not learn of this apparently controversial petition between March 8, 1956, and the time of its meeting on March 19, 1956; one or more members had consulted counsel in the meantime. If the Board, or any member, had made any inquiry whatever and thus had verified the validity of the petition, even at or after its meeting, it would only have been necessary to permit the notices already posted to remain and the publication to run. No new or additional notice was necessary. This contention is without any merit. Moreover, it is now wholly moot, for the April, 1956, annual meeting has long passed.

The remaining question is the applicability of the remedy of mandamus. Of course, the writ may not be used to control or direct how the discretion of a tribunal, acting in good faith, shall be exercised. State ex rel. Richardson v. Baldry, 331 Mo. 1006, 56 S.W.2d 67; State ex rel. Crow v. Carothers, 204 Mo.App. 209, 222 S.W. 1043. But, recognizing that principle,

mandamus will lie where a supposed discretion has been exercised arbitrarily, capriciously or in bad faith. State ex rel. Shartel v. Humphreys, 338 Mo. 1091, 93 S.W.2d 924 (citing various cases); State ex rel. McCleary v. Adcock, 206 Mo. 550, 105 S.W. 270; State ex rel. Journal Printing Co. v. Dreyer, 183 Mo.App. 463, 167 S.W. 1123, 1128; State ex rel. Johnson v. Sevier, 339 Mo. 483, 98 S.W.2d 677; State ex rel. Schulz v. Fogerty, Mo.App., 195 S.W.2d 908. The appellants here (through Mr. Shannon) stated at the trial that they did not intend to submit the proposition to the voters. We hold that the writ will properly lie under these facts.

 The peremptory writ issued by the trial court has long ago become obsolete; the statutory date for the 1958 annual meeting will pass before this opinion is filed. Our courts have held that such proposals may be submitted at duly called special elections. State ex rel. McCain v. Acom, Mo. App., 236 S.W.2d 749; State ex rel. Acom v. Hamlet, 363 Mo. 239, 250 S.W.2d 495; State ex rel. Dahm v. Goodin, Mo.App., 295 S.W.2d 600. And in State ex rel. McCain v. Acom, supra, where the date fixed in the alternative writ (being the date of the annual meeting) had passed before the final hearing, the trial court ordered, and the appellate court approved, the issuance of a "supplemental" writ of mandamus setting a new date for the submission at a special election. That action was approved, at least indirectly, in the subsequent case of State ex rel. Acom v. Hamlet, 363 Mo. 239, 250 S.W.2d 495, arising out of the same litigation. And see also, as specific authority, State ex rel. Dahm v. Goodin, Mo.App., 295 S.W.2d 600.

The judgment of the circuit court will be affirmed; the cause will be remanded to that court with directions to set a date for a special election at which time the voters of Reorganized School District No. 3 of Scotland County may vote upon the proposed change of boundaries, and to issue its supplemental writ of mandamus in peremptory form requiring these appellants (and any successors in office) to take all necessary steps toward that end. Under the circumstances of this case, whatever may have been the extent of appellants' discretionary authority in the first instance, the facts have now been fully developed, and the result stated herein flows therefrom as a matter of law. It will not be necessary to submit relators' petition again to the appellants for their independent action.

The judgment is affirmed and the cause remanded with directions. It is so ordered.

All concur.