## DESMOND, Respondent, vs. PIERCE, Appellant.

*December 12, 1924—January 13, 1925.*

*Corporations: Agreement to repurchase stock: Failure of consideration: Rescission: Trial: Real party in interest: Stockholder indorsing and delivering certificate: Review: Questions at issue but not decided by trial court.*

1. Although it was not urged before the trial court or presented in defendant's brief on appeal that plaintiff was not the real party in interest, but it was alleged in various forms in the answer and was therefore an issue in the case and came before the court by defendant's motions for judgment, and, under the statute, it being an element necessary to support the judgment that plaintiff be the real party in interest, a finding to that effect must be deemed to have been made. p. 488.

2. A trustee who purchased certain shares of corporate stock which were registered in the name of plaintiff, but were immediately indorsed in blank by the latter and delivered to the trustee, who placed them with other trust property, was the real owner of the shares under the Standard Uniform Transfer Act (sec. 183.01, Stats.) and by universal custom. p. 489.

3. Plaintiff having divested herself of title and color of title to the stock in favor of the trust fund, but who was not made a trustee of an express trust for such fund, could not maintain an action against one who had made an agreement to repurchase the stock, without having been reclothed with title or color of title by the subsequent act of some one having authority so to do. p. 489.

4. An attorney, who was also a trustee, contemplated bringing legal proceedings on behalf of certain stockholders, and the chairman of the board of directors of the corporation, upon such attorney agreeing to divorce himself from any adverse interest of stockholders and to act on behalf of the corporation, agreed to purchase the stock for $60 per share more than its then market value. The attorney, by subsequently acting for preferred stockholders in litigation against the corporation, and by permitting his name to be used as one of a committee of preferred stockholders, breached his contract, and the chairman was justified in rescinding the agreement and refusing to purchase the stock. p. 490.

OWEN, J., dissents.

APPEAL from a judgment of the circuit court for St. Croix county: E. C. HIGBEE, Judge. *Reversed.*

Plaintiff had judgment in the court below in this action to enforce specific performance of a written contract for the purchase of 100 shares of the preferred stock of the Pierce Oil Corporation.

Ambrose Tighe, a practicing attorney for many years at St. Paul, Minnesota, on October 29, 1919, gave his promissory note for $10,500 to the Merchants National Bank of that city. Payments were made thereon in various instalments and all by December 2, 1919, before due. On October 29th Tighe gave his check for $10,563.22 on the same bank to the Merchants Trust & Savings Bank in the same city in payment for 100 shares of the Pierce Oil Corporation preferred stock at $105, with accrued interest of $62.22. The shares were, at the direction of Tighe, registered in the name of the plaintiff, *Miss M. T. Desmond,* who for many years had been and at the time of the trial still was Tighe's stenographer.

Then and since Tighe was one of two trustees of a large trust fund created by the will of one Caroline Gotzian, deceased. A son of the deceased, Conrad, was the beneficiary of a part of such trust fund, but had not at the time of the

transaction here involved come into the possession of any of the principal of said fund. Between January 3 and June 30, 1920, checks aggregating the purchase price of all of said stock were drawn by Tighe as such trustee on the funds of said estate, payable either to his own order or to that of plaintiff, and by her indorsed to him. At the completion of such purchase the plaintiff indorsed the stock certificates, which were then taken by Tighe and placed and kept thereafter with the other securities and papers of such trust fund.

.The plaintiff invested no money and had and claims no personal interest of any kind in said stock.

Thereafter the market price declined and interest payment due October, 1921, was not made. In November, 1921, Tighe prepared a very lengthy circular to be sent to other holders of preferred stock reciting, among other things, that he represented the owner of 100 shares and suggesting a prompt movement for the organization of such stockholders and inviting answers. This circular, however, was first sent to the corporation itself, and after suggestions from it and with an additional statement by Tighe was sent to other stockholders in December. In the spring of 1922 Tighe went to New York with the then declared purpose of commencing legal proceedings and met with the defendant *Henry Clay Pierce* at the latter's invitation. *Pierce* was largely interested as a stockholder in and chairman of the board of directors of said corporation and averse, as Tighe learned, to having any such legal proceedings instituted. At personal interviews with defendant and his counsel by Tighe and his New York associate attorney a tentative agreement was proposed, and Tighe writes on June 5, 1922, a statement of his understanding of such proposed agreement. This was answered on defendant's behalf by reply of June 8th stating defendant's view of such agreement. Tighe's letter of June 10th then adopted the latter as expressing the agreement made.

The substance of such correspondence was:

That Tighe and his New York associate by their circular letter above referred to and responses received thereto had placed themselves in a situation of legal or moral obligation to others than merely to the client to whom Tighe referred as being the owner of the 100 shares in question here. Further, that if, without breach of what he designated as his and his associate's "*quasi*-professional relations to the others of such stockholders," he and his associate could, without embarrassment, give co-operative assistance to the corporation after first satisfying themselves that such assistance is justifiable, they would do so, to be paid reasonable attorney fees for such services if so requested and undertaken. That then and only upon the understanding that Tighe and his associate would so undertake the defendant would guarantee until January 1, 1923, the original purchase of said 100 shares as to principal and accrued dividends with an option on his part to so take it off her hands at any time prior to that date and with a firm obligation so to do at any time thereafter on demand.

By Tighe's letter of June 5th he announces that he and his associate find themselves in a position to accept the proposition to take up the stock of his original client at $105 and accrued dividends without any breach of their *quasi*-professional relations to the other stockholders; and stating, "My primary interest is my original client's fate. I am free to dispose of it without consideration for any other correspondents."

The so-designated release from any obligations to the other stockholders was based, under Tighe's testimony, upon the sending under date of May 25th to such answering stockholders of a circular letter by him from his associate's office in New York referring to the circular of December, 1921, and reciting, among other things, the following:

The possible different positions that various classes of such preferred stockholders might find themselves in with reference to legal relief. Stating that his original client has

delivered to them the certificates for the 100 shares indorsed in blank, has advanced already more than ten per cent. of its face by way of expense money, and has authorized them to proceed along the lines suggested in such way as they think proper, with the understanding that at the end they shall receive such compensation for services as may be agreed upon commensurate with the result. Stating further that however proper such course might be in the case of the original client, it may not appear appropriate to the others, and that the prosecution of such claims, if resisted, would necessarily involve expensive litigation, and that the likelihood of a successful outcome in any individual case would largely depend upon its particular facts. That participation therein should be a matter of the personal judgment of each stockholder. Finally, that in case Tighe or his associate do not hear promptly in assent, they would understand that the person addressed will not care to participate in this phase of the matter and they shall then be at liberty to act for those who do so authorize them, and that the broader movement, which concerns all the preferred stockholders and which is not in any way inconsistent with the assertion of the individual claims, will continue and the preferred stockholders will be advised as to what is doing as to it from time to time, even though they prove not interested in what was therewith submitted to them.

It does not appear that this circular was presented to defendant.

A written contract was then prepared by Tighe, signed by *Miss Desmond* and by the defendant, dated June 15, 1922, reciting that the plaintiff "is the owner of 100 shares of the preferred stock of Pierce Oil Corporation," represented by ten certificates for ten shares each. It provided that the seller, plaintiff, agrees to give to the defendant, buyer, on demand prior to January 1, 1923, such shares at $105 per share plus accrued dividends. That the buyer agrees to buy at such price on demand from the seller on January 1, 1923, or at any time thereafter. Other provisions of the contract as to place or manner of demand and place of delivery and payment are not here material.

On July 1, 1922, Tighe wrote from St. Paul to defendant's counsel in New York city in effect stating:

That he was not in position to let the Pierce Oil Corporation matter continue longer in its present situation as far as his and his associate's relations to it are concerned. That he and his associate "represent a large number of stockholders besides my original client." That when the proposition was made to purchase his original client's shares he and his associates were unable to accept it until they had communicated with the other clients and given them an opportunity to join in the movement which might secure for them the same proposition, and that in doing so Tighe and his associate advised such other stockholders that if they were not in position or did not care to join in the movement outlined on the terms named, he and his associate should nonetheless continue to represent them and protect their interests in other respects. That prior thereto he and his associate had drafted certain demands on the corporation and its directors for action looking toward the restoration of certain dissipated assets preparatory to beginning suits on the stockholders' behalf, if the demands were not complied with. That at the interview with defendant and his counsel the plan was suggested that Tighe and his associate should look into the corporation's condition and advance their clients' interests by co-operating for them in some scheme of financing, approval of which their investigation should warrant, and that until it was decided whether such second line of action was practicable and promising they determined to postpone what they first had in mind as a proper course. That more than a month had passed since he was in New York and that he is quite in ignorance as to what is doing or is proposed. That all this is quite inconsistent with the obligations Tighe and his associate have assumed towards "our clients," and if continued will put Tighe in the position of having inaugurated a plan of concerted action, and, after having gained a certain advantage for his original client, of having abandoned his other clients whose co-operation had made this advantage possible; that he is not willing to be so placed; that it is necessary that he and his associate should be advised finally of the corporation's decision and in a definite way. That no reason appeared why further

delay is required or how it can be granted "without preju-
dice to our clients."

On July 8th defendant's counsel answered:

Referring to and quoting from the letters of June 5th,
8th, and 10th, *supra,* and stating that the attitude of Tighe's
letter of July 1st is diametrically opposed to and in direct
breach of the faith, spirit, and letter of the negotiations and
consummations had between them.   That so far as con-
structive work under it by either Tighe or his associate in
connection with permanent financing and its relation to the
preferred stockholders of the corporation is concerned, such
situation was still under consideration, and when the proper
time comes it will be determined in the best interests of the
corporation and its stockholders, which may include the em-
ployment of one or both of Tighe and his associate.   That in
view of the attitude of the letter of July 1st the agreement
between defendant and *Miss Desmond* of June 15th now
assumes an entirely new complexion because the sole con-
sideration for the making of which on defendant's part con-
sisted of the unequivocal and positive understanding that if
such were made Tighe and his associate were through with
the Pierce Oil Corporation matters except as they might
thereafter be invited by the corporation to render services
for it as attorneys or attorney for fair compensation.   De-
mand was made upon Tighe, as attorney for *Miss Desmond,*  ·
either to withdraw the letter of July 1st and confirm the
prior understanding or that there be immediately canceled
and returned the agreement of June 15th.   That if the posi-
tion outlined in the letter of July 1st be adhered to, defend-
ant is entitled to rescission of the contract with plaintiff.   A
copy of the same was inclosed for delivery by him to *Miss
Desmond,* his client.

Tighe indicated no intention of changing from the atti-
tude of his letter of July 1st, and about the 1st of October
he accepted an invitation to permit his name to be used as
one of a committee of preferred stockholders, but did not
act with such committee other than to permit the public use
of his name.

Subsequently demand was made on behalf of plaintiff for

compliance with the contract of purchase, and upon refusal by defendant this action was commenced in January, 1923.

Upon the trial the depositions taken prior to trial of Tighe as agent or attorney for *Miss Desmond,* and of *Miss Desmond,* were read in evidence and the two were witnesses.

When the statement was first made that the testimony was closed, plaintiff's counsel moved the court to instruct the jury to return a verdict for plaintiff. After argument by counsel and a lengthy statement by Mr. Tighe the motion was denied. Further offers of correspondence as evidence were made and some of such offers received. The defendant then moved for a directed verdict against the plaintiff upon the grounds that all of the evidence shows that the plaintiff has no cause of action and also shows that the plaintiff breached the contract on which the suit is brought.

The trial court then stated that if such motion had been made at the time the motion by plaintiff had been made it would have been granted; that under the statute, both having without reserve made the motion to direct a verdict, the matter is submitted to the court for judgment, but in this case, notwithstanding that fact, it would be submitted to the jury and the court would then consider what judgment should be pronounced.

The special verdict submitted and answered by the jury in effect was that the contract between defendant and plaintiff was upon the agreement and understanding that Tighe and his associate would be put in a position where they could without embarrassment give co-operative assistance to the corporation if requested by defendant, and that such understanding constituted an agreement on the part of Tighe that he would not, within a reasonable time thereafter, take any action regarding the affairs of the corporation except upon *Pierce's* request. That the letter of July 1st, *supra,* did not violate such agreement nor did the use of Tighe's name by the committee; that Tighe did not, by the refusal to comply

with the demand in the letter of July 8th, violate the terms of his agreement, nor did he represent to defendant that the plaintiff was the owner of the stock; that no reliance was placed by defendant upon any such representation; that Tighe did represent to defendant as an inducement to enter into the contract that the owner of the stock was a person of large financial resources; that such representation was not false and not relied upon by defendant.

After respective motions the court directed a verdict for the plaintiff for the amount claimed. From such defendant has appealed.

For the appellant there were briefs by *Hanitch, Hartley & Johnson* of Superior, and oral argument by *Louis Hanitch, H. S. Priest* of St. Louis, and *C. W. Randall* of New York.

For the respondent there were briefs by *Haven & Ashley* of Hudson, attorneys, and *George Hoke* of Minneapolis and *Ambrose Tighe* of St. Paul, of counsel, and oral argument by *Mr. Tighe.*

ESCHWEILER, J. Upon the trial no oral testimony was given other than that of plaintiff and Ambrose Tighe on her behalf, and the most material evidence was embodied in writings. The situation thus presented was therefore to be disposed of as a matter of law by the court, and there were no issues for a jury.

The plaintiff, *Miss Desmond,* seeks to enforce specific performance of the writing of June 15, 1922, so far as it purported to give her the right to have from defendant on demand after January 1, 1923, a specified amount of money for 100 shares of the preferred stock of the Pierce Oil Corporation, of which 100 shares she was recited to be the owner.

We think that upon this record such relief should be denied upon two grounds: first, because she was not a real

party in interest; and second, because the ostensible contract of June 15th was justifiably rescinded by defendant for a substantial failure of consideration or breach.

The first of these grounds is not presented in appellant's brief, nor was it specifically urged before the court below. It was, however, alleged in the answer in various forms and was therefore an issue in the case and before the court by defendant's several motions for judgment, prior to and after verdict, and, under our statutes, being an element necessary to support the judgment ordered for the plaintiff, must be deemed to have been determined by the trial court in plaintiff's favor, no specific finding in that regard having been made. In the furtherance of justice, also, we deem it proper for consideration.

The plaintiff had no money invested in this stock at any time. Her employer, Tighe, was the sole actor in all of the transactions concerning it. On his adverse examination before trial he stated that he was responsible for this investment and will make it good to anybody that happens to have money in it, but on the trial he took occasion to say that by such statement he meant only that it was his moral, not legal, obligation. He testified as a witness, was permitted to make lengthy statements in the court below, prepared the brief, and participated in the argument here.

The documentary evidence discloses that Tighe's individual promissory note of October 29, 1919, was the basis for his check of the same day by which this stock was purchased. The stock then purchased was, at his direction and for his convenience, registered in plaintiff's name. His note was paid by December 2d. At that time, then, under the evidence, Tighe was the legal owner of the stock. Between January and July, 1920, Tighe invested the trust funds existing under the will of Mrs. Gotzian, and in his control, in this stock. As the stock was thus paid for from time to time, the respective certificates were indorsed by *Miss Desmond*, taken by Tighe as trustee, and ultimately all of them

were in the receptacle set aside exclusively for the securities of that trust and carried as an asset of the trust, as is so testified to by Tighe.

By such indorsement and transfer of possession of the stock *Miss Desmond,* as a matter of law, was deprived of all title and color of title. This is so whatever may have been the intention of Tighe in so arranging it or whatever may have been the fancied convenience in having trust property in the assumed power of disposal by a third person and from whom, as in this case, no written declaration of trust was taken as a safeguard to such trust fund.

As to such shares of a kind so generally dealt in on the stock market and requiring for convenience that title to and right to sell shall appear on the face thereof, the indorsement in blank and delivery, in the absence of certain exceptions none of which appear here, passed absolute and complete title.

Such is the rule in the Standard Uniform Stock Transfer Act (sec. 183.01, Stats.). Such is the rule by universal custom. *National S. D. Co. v. Hibbs,* 229 U. S. 391, 395, 33 Sup. Ct. 818; *Union T. Co. v. Oliver,* 214 N. Y. 517, 523, 108 N. E. 809; *Clews v. Friedman,* 182 Mass. 555, 66 N. E. 201.

Having thus divested herself of title and color of title in favor of the trust fund, plaintiff could not be reclothed with title or color of title except by some appropriate subsequent act by some one having authority so to do, and no such act is shown. She was not made a trustee of any express trust for such trust fund in any possible view of the situation.

Upon the issues raised and the facts presented, *Miss Desmond* had no standing in court as a plaintiff and the action should be dismissed on that ground.

On the other feature of the case, the incontrovertible facts embodied in the writings are set forth in the foregoing statement and present this situation:

Tighe calls the attention of the Pierce Oil Corporation to

his proposed action regarding the preferred stockholders. Defendant *Pierce* prefers to have Tighe as a friend rather than enemy, and so informs him. It is then proposed that Tighe and his New York associate divorce themselves from all allegiance to any possible adverse interests that might arise on account of the other preferred stockholders and make themselves free to accept a retainer and perform legal services for compensation on behalf of the same corporation. Tighe notifies defendant that he is so at liberty, except as to the owner of the 100 shares, by his letter of June 5th. The 100 shares of·stock were then worth in the market about $45 per share. Defendant, in consideration of Tighe's placing himself in such position that he may serve a new master, is willing to and agrees to pay about $60 per. share more for the 100 shares than it is then worth in the market.

Tighe draws the contract for the sale and purchase of the 100 shares at $105 per share and accrued dividends, but makes therein no express reference to the consideration for the making of such contract. The consideration, however, is the proper subject of inquiry and is disclosed by written statements of Tighe to be as above stated.

His letter of July 1st, *supra,* is a clear and unequivocal repudiation of his newly assumed obligation; its recital of a then recognition on his part of a present and continuing obligation as attorney to the preferred stockholders contradicted his former statement that he was free of that relationship. If Tighe did not, prior to June 15th, in contemplation of possible retainer by defendant or the Pierce Oil Corporation, divest himself of all professional obligations concerning the corporation with the stockholders other than the owner of the 100 shares, then there was an absolute and complete failure of consideration. If he did so dissolve such professional relationship prior to June 15th and then renew it, there was an absolute and complete breach on his part of the contract. Either was ample justification for defendant's declared rescission of July 8th.

The transaction between Tighe and defendant was an entire one, part found in one writing, the rest thereof in other writings, and it must stand or fall as one transaction, not several, and upon all the writings and not one alone.

Assuming, therefore, that this action could be brought by *Miss Desmond* for herself or Tighe upon the writing of June 15th, nevertheless the justifiable and express rescission thereof by defendant is an absolute bar to a recovery.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.

OWEN, J. (*dissenting*). I cannot agree to a dismissal of the complaint upon either ground mentioned in the opinion. The legal title to this stock was in the plaintiff as trustee. She was entitled to maintain this action in her own name. Sec. 2607, Stats.; *Allen v. Kennedy*, 49 Wis. 549, 5 N. W. 906. Whether she ever parted with title to this stock was a question not litigated at the trial. While there are allegations in the answer denying that she is the real party in interest, the whole tenor of the answer is to the effect that Mr. Tighe was the owner of the stock. At no time during the trial was it suggested to the court that the plaintiff did not have a sufficient interest in the stock to maintain the action, nor was there any request made for a finding of the jury upon this question. I cannot agree that the evidence that plaintiff had parted with her title to the stock is so clear as to justify such a conclusion on the part of this court in the absence of a finding thereon by the lower court. The evidence satisfies my mind that Mr. Tighe never owned any interest in the stock. It is true that he borrowed the money with which the purchase was completed in the first instance. It is clear, however, that he did not purchase the stock as a personal investment. It appears that he was a trustee of numerous funds and that this stock was purchased with the idea of investing such funds therein as they might accrue. He borrowed the money with which to make the

original investment, but the loan was speedily paid as these trust funds were made available. The entire transaction was a transaction for the benefit of the trust funds under the administration of Mr. Tighe as trustee, and I am well satisfied that there was never at any time any thought on the part of Mr. Tighe that he had any personal interest in the stock.

It is said in the opinion that the title passed from the plaintiff when she indorsed the certificates in blank and they were placed in the deposit box of the Gotzian estate. I apprehend that such a transaction does not amount to a transfer of title unless it be accompanied with an intent to pass title. While it is held that the title passed from the plaintiff, it is not stated to whom it did pass. If the bare circumstance of indorsing a certificate of stock and delivering it to another constitutes a transfer of title, then the holder of stock parts with his title whenever it is hypothecated as security for a loan. Being of the opinion that the mere delivery of a certificate of stock indorsed in blank does not pass title to the stock in the absence of an intent to accomplish that purpose, I cannot agree that the evidence in this case is so clear that this court should so adjudge in the absence of a finding by the trial court.

If, as I think, Mr. Tighe had no beneficial interest in the stock at the time of the negotiations between him and *Pierce,* then it matters not whether his contract with *Pierce* was breached. As I view this case, Mr. Tighe was really acting not for himself but for clients. To protect their interests he threatened litigation against the oil company. *Mr. Pierce* was not only desirous of avoiding this litigation, but he evidently sought to tie the hands of Mr. Tighe so that he could not embarrass the company by any future litigation. He proposed to do this by retaining Mr. Tighe as his attorney, and in order to place Mr. Tighe in a position where he could accept such a retainer he entered into the agreement which was the subject of this suit. By the agreement of *Mr. Pierce* to buy the plaintiff's stock, Tighe was placed in

a position to serve *Pierce* should his services be desired. This was the inducement to *Pierce* to buy the stock. Whether Tighe breached any agreement he had with *Pierce* is immaterial so far as this plaintiff is concerned. The agreement between *Pierce* and Tighe was an independent agreement, and the breach of that agreement cannot affect the agreement between *Pierce* and *Desmond,* and I think that would be true even though Tighe was the beneficial owner of the stock as trustee. His agreement to serve *Pierce* in his professional capacity was a purely personal agreement, entirely separate and distinct from his capacity as trustee, and his agreement made in his personal capacity cannot affect a separate and independent agreement made in his trust capacity, though *Pierce* might have been induced to enter into the one in order to accomplish the other.

For these reasons, rather briefly stated, I dissent.