Charles H. BARNARD et al., Respondents,

v.

Loyd MURPHY, Doing Business as Allied Refrigeration, Appellant.

Gordon NEIL et al., Respondents,

v.

Loyd MURPHY, Doing Business as Allied Refrigeration, Appellant.

Supreme Court of Missouri,

Division No. 1.

March 11, 1963.

Edwin Earnshaw, Kirchner, Vanice & Earnshaw, Kansas City, for appellant.

Harold T. Van Dyke, John R. Cleary, Kansas City, Linde, Thomson, Van Dyke, Fairchild & Langworthy, Kansas City, of counsel, for Charles H. Barnard and others.

Foust & Lyons, Stephenson, Henry & Schollars, Kansas City, for respondents.

HOLLINGSWORTH, Judge.

Each of the several plaintiffs in the above cases seeks damages for (a) the value of food which admittedly spoiled by reason of inadequate refrigeration while stored in a locker or lockers in a locker plant owned and operated by defendant and (b) the amounts paid for the portion of the rental period during which such food was stored in said plant. In the first case, hereinafter referred to as the "Barnard case", six of defendant's customers had joined in one action under S.Ct. Rule 52.05, V.A.M.R., each seeking to recover solely in his own behalf. In the second case, hereinafter referred to as the "Neil case", three of defendant's customers instituted a class action under the provisions of S.Ct. Rule 52.08 in behalf of themselves and all "renters or

lessees of locker space [in defendant's locker plant], who are so numerous as to make it impracticable to bring them all before the court; * * *." On motion of plaintiffs in the Barnard case, the trial court ordered the cases consolidated, as more fully hereinafter detailed. A jury was waived and the cases, consolidated as aforesaid, were tried to the court, resulting in a finding and judgment in favor of each of the six plaintiffs in the Barnard case in the aggregate amount of $873.89 and for 256 of the plaintiffs in the Neil case in the aggregate amount of $17,654.99, total $18,-528.88. The amount in dispute being in excess of $15,000.00, jurisdiction lies in this court. Art. V, Sec. 3, Constitution of Missouri, V.A.M.S.; Sec. 477.040 RSMo 1959, V.A.M.S.

On appeal, defendant asserts error in two respects:

(1) "The trial court erred in ordering the joinder of the respondents in a class action when in fact, under [S.Ct. Rules 52.08 and 52.09] this is not a proper class action and the respondents have no joint or common cause of action against appellant, but only several contracts, and no common or joint property or fund existed and no joint or common relief could be granted."

(2) "The trial court erred in determining that the appellant was liable absolutely as an insurer instead of requiring him to use ordinary care as a warehouseman for the preservation of those articles, * * *. The trial court also erred in substituting its own opinion on 'ordinary care' for the evidence."

In 1945, Laws 1945, p. 940, presently Secs. 196.450–196.515 RSMo 1959, V.A.M.S., to which revision all statutory references are made unless otherwise indicated, the Legislature enacted a statute entitled "An Act to regulate the operation of plants for the cold storage of food in individual lockers." It required, among other provisions, that no such plant should be operated without first obtaining a license from the Department of Agriculture. Section 196.485 requires:

"1. The refrigeration system for a locker plant shall be equipped with accurate and reliable controls for the automatic maintenance of uniform temperatures, provided this shall not apply to locker plants having constant temperature supervision.

"2. Temperatures shall be maintained in the respective rooms as follows:

* * * * * *

"(3) Locker room, temperatures of zero degrees or lower, with a tolerance of five degrees above zero degrees.

"3. The locker room shall be equipped with a self-registering, accurate recording thermometer. * * *"

Section 196.495 requires:

"Every operator of a locker plant shall keep an accurate record of the name and address of the user of each locker."

Section 196.510 requires:

"1. * * * Operators of locker plants shall not be construed to be warehousemen, nor shall receipts or other instruments issued by such persons in the operation contracts of their business be construed to be warehouse receipts or subject to the laws applicable thereto, nor shall the provisions of sections 196.450 to 196.515 apply to any warehouseman licensed under the provisions of chapter 415, RSMo.

"2. The operators of all locker plants shall furnish satisfactory locker content insurance to indemnify users against loss, issued by companies duly authorized and licensed to do and transact business in the state of Missouri, in a minimum amount for each locker or locker plant to be determined by the commissioner; provided, how-

ever, that such operator may, and is hereby authorized to, collect the *pro rata* amount of the premium for such insurance from the user in addition to the locker rental as an additional service."

The essential facts are not in dispute. Sometime after January 1, 1959, defendant, after being duly licensed, established the plant involved in this case at 228 W. 75th Street in Kansas City. Shortly thereafter lockers were rented to plaintiffs herein, either on monthly or yearly contracts, as each plaintiff desired. Defendant was familiar with the statute and undertook to comply with its provisions. However, on the second Monday in May, 1959, the locker room temperature began to rise above the maximum levels fixed by the statute. That condition lasted for a period of six weeks, until the compressor in the locker room was replaced in July. Meat begins to deteriorate when the temperature rises above five degrees above zero. During the aforesaid period the temperature rose at times to 25 degrees above zero. When the compressor finally "went out", defendant closed down the plant and went to St. Louis to get a new compressor. That trip caused the plant to be without any refrigeration for a period of about 48 hours. The meat became unfit for human consumption and was disposed of by defendant. Defendant, at the "request" of the state, carried a policy of insurance on the 300 to 400 lockers rented to his locker customers with the Aetna Casualty and Surety Company. In January, 1960, defendant wrote a letter to his customers "indicating" that they should make a claim against said insurer because he thought that to be "the proper place to make a claim." Defendant, in effect, concedes that all of the plaintiffs herein (those suing directly and those included in the judgment as a class) had meat stored in lockers rented from defendant during the aforesaid period and that the amount of damages awarded each plaintiff is due him, if liability exists.

In the Neil case, Aetna Casualty and Surety Company was joined with defend-ant Murphy as a co-defendant. The petition pleaded the provisions of the locker plant act (Secs. 196.450–196.515) as the standard required by law of the defendant Murphy in the operation of said plant; that, pursuant to the requirements of Sec. 196.510, defendant had purchased and Aetna had issued its indemnity policy No. IMB 78223 which at all material times was in full force and effect; and "that the proceeds from said policy represent a common fund to which all members of the plaintiffs class are entitled." The answer of Aetna expressly admitted the issuance of said policy and that it was in full force and effect; admitted that the proceeds from said policy represented *a common fund* to which all members of the plaintiff class were entitled; admitted that there had been failure of the refrigeration plant, allowing the foods stored therein to become unfit for human consumption; and denied its liability.

Following the filing of Aetna's answer, plaintiffs in the Barnard case filed their motion to "intervene or to consolidate" their action with the Neil case on grounds that they were locker renters of defendant Murphy and had filed suit in the Circuit Court of Jackson County, Missouri, against this defendant; that their cause of action was the same as the class plaintiffs herein; and that they were, therefore proper parties plaintiff in the class action. That motion was sustained and the trial court ordered the consolidation of both cases *"for all purposes"*. (Emphasis supplied.)

The answer of defendant Murphy admitted that his plant was controlled and regulated by the provisions of the locker plant act; that the policy of insurance issued by Aetna was in full force and effect; *denied* that it constituted *a common fund* and alleged that it insured only the *named* plaintiffs in the Neil case. Defendant's answer also contained a "motion to consolidate" the Neil case with another suit allegedly pending in the Circuit Court of Jackson County brought by defendant Murphy on behalf of the locker users insured under the said

policy of insurance against Aetna. The ground upon which that motion was predicated was that it would "avoid confusion and complication in the work of the court." The trial court overruled that motion. Defendant did not object to that ruling when it was made, nor did he assert error with respect thereto in his motion for new trial.

When the cases (consolidated *for all purposes*) came on for trial, plaintiffs, over the objection of Aetna but without objection on the part of defendant Murphy, were granted leave of court to dismiss without prejudice as to Aetna; and did so dismiss. The reason for dismissing as to Aetna is not explained in the record, but it is here suggested by plaintiffs that when Aetna admitted that the policy constituted a common fund for the indemnification of all of the plaintiffs, there was no necessity of retaining Aetna as a defendant in order to adjudicate the issues presented in the consolidated class action as against defendant Murphy upon the theory, it seems, that if and when necessary, Aetna could be subjected to garnishment. But, inasmuch as defendant Murphy made no objection to the dismissal and assigned no error to the ruling in his motion for new trial, and now makes no valid objection to the procedure thus taken, it need not be further considered.

We now turn to the matters preserved and assigned for review. Defendant's contention that these cases (consolidated by order of the trial court as one case for all purposes on motion of plaintiffs in the Barnard case) do not constitute a class action within the meaning of S.Ct. Rules 52.08 and 52.09 cannot be sustained. There is no suggestion that the named plaintiffs were not fairly chosen nor that they do not adequately represent the whole class. The uncontroverted evidence shows that the users of lockers in defendant's plant, as shown by defendant's records, were notified of the institution of this action and that the suit would be maintained in behalf of each unless he advised to the contrary. The evidence tended to show that they were fairly chosen and adequately represented, and the trial court so found.

Clause (a) of S.Ct. Rule 52.08, defining class actions, which is substantially identical with Federal Rule 23, reads as follows:

"If persons constituting a class are very numerous or it is impracticable to bring them all before the court, such of them, one or more, as will fairly insure adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

"(1) Joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;

"(2) Several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

"(3) Several, and there is a common question of law or fact affecting the several rights and a common relief is sought. * * *"

Defendant insists that no common cause of action existed against defendant; that the rental contracts of the class are several; that no common fund existed; that no common relief could be granted; and that, therefore, these cases are "spurious" class actions within the meaning of clause (a) (3), which clause (it has been held in the federal court) does not authorize a binding judgment in favor of a mere permissive class plaintiff who has not come into court prior to entry of the judgment in his behalf and made proof of his claim. See Hess v. Anderson, Clayton & Co., D.C., 20 F.R.D. 466, 475–483; Pentland v. Dravo Corporation, C.C.A., 3rd Cir., 1945, 152 F.2d 851,

We are convinced that defendant's insistence that no common relief may be granted plaintiffs on grounds that no common fund exists out of which they may re-

cover their pro rata share of the outstanding insurance policy is without merit. Aetna expressly admitted the issuance of the policy, admitted that it was in full force and effect, and that it constituted a "common fund" in which all members of the plaintiff class were entitled to share. Under those circumstances, defendant Murphy's mere denial that the policy constituted a common fund and insured only the named plaintiffs cannot serve to destroy the solemn admission of Aetna. In the first place, defendant Murphy, the holder of the policy, did not introduce it in evidence and his bald assertion that it did not constitute a common fund (as expressly admitted by Aetna) does not amount to proof of the fact. Furthermore, the statute, Section 196.510(2), required defendant to furnish locker content insurance to indemnify his locker users against loss in a minimum amount for each locker or locker plant, as determined by the commissioner. Therefore, any policy issued pursuant to those provisions would of necessity constitute a common fund, irrespective of whether it was written on the basis of each locker or on the plant as a unit. Neither is it of moment that the claims of each of the class plaintiffs were several instead of joint. The right to be enforced by each was common to all locker users and the fact that the amount to be recovered by each would be limited to his pro rata share did not militate against the fact that the right to be enforced was common to all. Moser v. Keller, Mo., 303 S.W.2d 135, 150–151(5), (6).

But, even if the theory of "common fund" eventually should fail for some reason not here appearing, clause (a) (2) of S.Ct. Rule 52.08 would, as we read it, clearly authorize the maintenance of these actions, consolidated for all purposes, as a class action. The several claims here made and adjudicated have for their object an adjudication of the *several rights* of the class plaintiffs *which do or may affect specific property involved in the action*, to wit: the outstanding Aetna insurance policy, which policy Aetna admits represents a common fund to which all members of the plaintiff class are entitled.

■ Neither can defendant's contention that no case was made against him on the merits stand. He was familiar with the provisions of the locker plant act, admittedly undertook to meet its requirements and admittedly failed to do so. The act, in terms, declares that the operators of locker plants shall not be construed to be warehousemen nor shall the statutory provisions of the warehouse statutes (Chap. 415) be applicable to them. The minimum temperatures required by the locker plant act to be maintained in every locker plant are mandatory; they are so made for the protection of the locker users; and they declare the public policy of this State in that regard.

We are convinced and hold that every food locker plant operator must be held impliedly to agree with every person to whom he rents a food locker that all foods therein stored shall be kept and maintained in the manner and at the temperature levels prescribed by the act; and that any failure to do so, which results in loss to the locker user, renders the operator liable for the value of the food and for rentals paid during the period in which the spoiled food was in process of deterioration by reason of failure to maintain the temperature levels required by the statute. This for the reason that a statute such as this, in law, becomes a part of every contract made between the locker plant operator and the individual locker renter. 17 C.J.S. Contracts § 330, p. 782; 12 Am.Jur., Contracts, Sec. 240, p. 769; Curators of Central College v. Rose, Mo., 182 S.W.2d 145, 148[4]; Christy v. Petrus, 365 Mo. 1187, 295 S.W.2d 122, 125 [2]; Emerson v. Treadway, Mo.App., 270 S.W.2d 614, 622 [19–21]; Cheek v. Prudential Ins. Co. of America, Mo., 192 S.W. 387, 393[7], L.R.A.1918A 166; Carr v. Montgomery Ward & Co., Mo., 363 S.W.2d 571, 574[3].

■ Defendant has undertaken in his reply brief to assert and argue several new

grounds of error, which, with commendable frankness, he has correctly designated as "additional points and authorities". It is well settled that assignments of error presented for the first time in a reply brief cannot be considered. "Issues submitted in an appellant's brief on original submission are not to be enlarged by presentations in a reply brief as a respondent is entitled to an opportunity to answer an issue presented by an appellant." State ex rel. Houser, Atty. Gen., v. St. Louis Union Trust Co., Mo., 248 S.W.2d 592, 594[1]. See also Denney v. Spot Martin, Inc., Mo.App., 328 S.W.2d 399, 405[6, 7]; Myers v. Karchmer, Mo., 313 S.W.2d 697, 710[24]; In re Buder's Estate, Mo., 317 S.W.2d 828, 837 [4, 5]; 3 Mo.Dig., Appeal and Error, 

The judgment is for the right party and is affirmed.

All concur.