James Y. VANDIVORT and Charles T.
Hayes, Plaintiffs-Respondents,

v.

DODDS TRUCK LINE, INC., a corporation,
Defendant-Appellant.

No. 8853.

Springfield Court of Appeals.

Missouri.

July 23, 1969.

Moore & Brill, Richard D. Moore, New-
ton C. Brill, West Plains, for defendant-
appellant.

G. C. Beckham, Steelville, William E. Seay, Salem, Granville L. Gamblin, St. Ann, for plaintiffs-respondents.

STONE, Judge.

In this jury-tried action at law in two counts for recovery on two negotiable promissory notes executed by defendant Dodds Truck Line, Inc., plaintiff James Y. Vandivort had a jury verdict on Count I for $10,335 and plaintiff Charles T. Hayes had a jury verdict on Count II for $2,586, the verdict on each count embracing the principal sum of the note in suit, interest thereon to May 3, 1968, the date of trial, and an attorney's fee of an additional 10%. From the judgment entered on those verdicts, defendant appeals.

Plaintiffs were minority shareholders of B & M Express Company, Inc. (hereinafter called B & M), Vandivort owning 60 shares and Hayes owning 15 shares of B & M common stock. The only other shareholder, Willard Eugene Camden, owned 120 shares of B & M common stock and was president and general manager of the corporation. The two notes in suit were executed and delivered by defendant in payment of the agreed purchase price of Vandivort's 60 shares and Hayes' 15 shares of B & M stock. The Vandivort note was in the principal sum of $6,000, the Hayes note in the principal sum of $1,500. Both notes were dated October 1, 1960, payable one year thereafter, with interest from date at 6% per annum, payable and compounded semiannually, and an attorney's fee of an additional 10% if suit were brought thereon.

During opening statements to the jury, defendant's counsel frankly admitted that defendant "did execute and deliver both of these promissory notes to the plaintiffs" and stated their intention "to show, as [the] only defense, that these [Vandivort's and Hayes'] shares of stock were never delivered to defendant corporation," [1] i. e., that there was a lack or failure of consideration for the notes—an affirmative defense which, as required,[2] had been pleaded in defendant's answer. The notes, admittedly executed and delivered, imported a consideration;[3] and their

1. There is a clear legal distinction between a "share of stock" and a "stock certificate." "A share of stock is a unit of interest in a corporation . . . . [It] is the actual property of the shareholder. The stock certificate on the other hand is merely the evidence of a membership—an attestation of the stockholders' ownership of shares." 18 Am.Jur.2d Corporations § 209, pp. 737–738; Duncan v. Kelly, Mo.App., 435 S.W.2d 29, 32–33 (1). Otherwise stated, "shares of stock are simply units of interest in the corporation" evidencing "an intangible right to participate according to the amount of stock held, in the immunities and benefits of the corporation" [Hayes v. St. Louis Union Trust Co., 317 Mo. 1028, 1044, 298 S.W. 91, 97(10), 56 A.L.R. 1276], while a "stock certificate" is only "the tangible evidence of title" to shares of stock. State ex rel. North American Co. v. Koerner, 357 Mo. (banc) 908, 919, 211 S.W.2d 698, 702; Union Electric Co. v. Morris, 359 Mo. 564, 571, 222 S.W. 2d 767, 771. See Williams v. Everett, Mo. (banc), 200 S.W. 1045, 1050(8); Vanstone v. Goodwin, 42 Mo.App. 39, 47 (5). However, in the case at bar this distinction has not been honored or observed by counsel or the witnesses, and it is crystal clear that the affirmative defense upon which defendant has relied throughout this litigation has been that plaintiffs' *stock certificates* were not delivered.

2. Rule 55.10; § 509.090; Smith v. Ohio Millers' Mutual Fire Ins. Co., 320 Mo. 146, 167, 6 S.W.2d 920, 927; South Side Bank of Kansas City v. Ozias, Mo.App., 155 S.W.2d 519, 527(19); Cahn v. Miller, Mo.App., 106 S.W.2d 495, 496(3), 497; Franklin Bank v. International Hospital Equipment Co., 217 Mo.App. 131, 145, 273 S.W. 197, 200(7). (Except as otherwise stated, all statutory references are to RSMo 1959, V.A.M.S., and all references to rules are to the Supreme Court Rules of Civil Procedure, V.A.M.R.)

3. §§ 401.024, 431.020; Cox v. Sloan, 158 Mo. 411, 423, 57 S.W. 1052, 1054; Burns v. Weber, Mo.App., 399 S.W.2d 446, 449 (4); Connersville Casket Co. v. Gist, Mo.App., 355 S.W.2d 374, 375(1); Simmon v. Marion, Mo.App., 227 S.W.2d 127, 134(12). Provisions of the Uniform Commercial Code [Laws 1963, p. 503,

admission into evidence made a prima facie case for plaintiffs, which could have been overcome only by a showing that they were without consideration,[4] this being the pleaded affirmative defense on which defendant was required to shoulder the burden of proof.[5] However, after the notes were received in evidence plaintiffs did not rest as they might have done [cf. Duncan v. Black, Mo.App., 324 S.W.2d 483, 484; Waugh v. McCormick, Mo.App., 93 S.W.2d 77, 78] but, in anticipatory disaffirmation and refutation of the pleaded defense, adduced testimony showing (so plaintiffs here insist but defendant denies) that plaintiffs' stock certificates, assigned in blank, were delivered to Charles D. Dodds, secretary-treasurer of defendant corporation, about November 1, 1960, in a closing conference at the office of attorney William E. Seay in Salem, Missouri, of which more anon.

At the close of plaintiffs' evidence, defendant moved for an "order dismissing plaintiffs' cause of action" on the grounds "that plaintiffs have failed to sustain the burden of proof required by law to establish a case at law against this defendant, and failed to establish facts in evidence whereby plaintiff could recover any damages . . . ." When that motion was overruled, defendant stood on it and declined to offer any evidence. Whereupon, plaintiffs filed their written motion for a directed verdict on the ground that "no evidence has been offered or received which raises a jury issue on . . . failure of consideration, as

alleged in defendant's answer." That motion likewise being overruled, the cause was submitted on instructions which enjoined a verdict for plaintiffs if the jurors believed that delivery of plaintiffs' stock certificates "was made to Charles Dodds, an officer of the defendant corporation," and a verdict for defendant if they did not so believe. Following entry of judgment on unanimous verdicts for plaintiffs, *defendant* filed its timely after-trial motion for judgment in accordance with its motion to dismiss at the close of plaintiffs' evidence or, in the alternative, for a new trial, and *plaintiffs* filed their timely after-trial motion to set aside the jury verdicts and judgment thereon and to enter judgment in accordance with their motion for a directed verdict at the close of all the evidence. Both motions being deemed denied by the trial court's failure to rule them within 90 days after the respective dates of filing [Rule 78.04; § 510.360], defendant perfected this appeal.

The only points presented in defendant's-appellant's brief were that the trial court erred (1) in failing to give MAI 3.-01, the burden of proof instruction defining the term "believe" which, as the "notes on use" state, "must be given in every case," and (2) in giving instruction 9 (characterized by defendant as "a version of MAI 32.01") containing forms of verdict which provided for assessment of each plaintiff's damages in a single lump sum, when "there was an applicable MAI instruction for this situation, namely MAI 32.09,[6] and as a result thereof defendant

now V.A.M.S. Chap. 400] are not applicable to the transactions under discussion, which occurred prior to July 1, 1965, the effective date of the UCC. Laws 1963, p. 637, § 10–101; 20A V.A.M.S., p. 2; Laws 1963, p. 637, § 10–102(2); V.A.M.S. § 400.10–101.

4. People's State Bank of Hartville v. Hunter, 216 Mo.App. 334, 338, 264 S.W. 54, 55(1); Kugman v. Donnell, Mo.App., 271 S.W. 535. See Lampe v. Franklin American Trust Co., 339 Mo. 361, 380, 96 S.W. 2d 710, 720, 107 A.L.R. 465; Swyers v. Russell, Mo.App., 426 S.W.2d 743, 745

(3); Moore v. Dickerson, Mo.App., 137 S.W.2d 495, 496(2).

5. Popovsky v. Griwach, 361 Mo. 1120, 238 S.W.2d 363, 366(4); Duvall v. Duncan, 341 Mo. 1129, 111 S.W.2d 89, 92(3); Thompson v. McCune, 333 Mo. 758, 63 S.W.2d 41, 43(2); Fitzgibbon Discount Corp. v. Hatchett, Mo.App., 427 S.W.2d 786, 789(4); McGinnis v. Rolf, 239 Mo. App. 54, 189 S.W.2d 456, 460(2).

6. Since MAI 32.09 includes a form of verdict providing for separate assessments of damages and interest, it would seem that, in a suit on a note where recovery

was prejudiced." We need not and do not rule either of these points,[7] because we accept, for the purposes of this opinion, the ready concession of plaintiffs-respondents in their answering brief that, *if defendant's pleaded affirmative defense was submissible on the evidence adduced,* error in the particulars assigned by defendant might be found. However, plaintiffs earnestly insist here, as they did upon trial, that they were entitled to directed verdicts and that, therefore, no prejudicial error "materially affecting the merits of the action" [Rule 83.13(b); § 512.160(2)] could have resulted from the trial court's action in giving, or in failing to give, any instruction. If plaintiffs' premise be correct, the stated conclusion undoubtedly is sound and supported by abundant authority.[8]

■ So recognizing, defendant-appellant has, in a post-submission memorandum in the nature of a reply brief, joined issue with plaintiffs-respondents on the determinative question as to whether or not the pleaded affirmative defense of lack or failure of consideration was submissible, that (in the language of defendant's memorandum) "referring of course to plaintiffs' [alleged] failure to deliver to defendant the certificates of stock in B & M Express Company, Inc., for which the promissory notes were given" to plaintiffs. We agree with defendant that, in our determination of the submissibility of its affirmative defense, it is entitled to whatever benefit may be reaped from the evidence adduced by plaintiffs [cf. Terry v. Metropolitan

Life Ins. Co., Mo.App., 206 S.W.2d 724, 728(7)], and that we must consider such evidence in the light most favorable to defendant. With those principles in mind, we return to the transcript.

At plaintiff Vandivort's drug store in Salem, Missouri, where his brother-in-law, plaintiff Hayes, also worked, Vandivort endorsed in blank on its reverse side the certificate evidencing his ownership of 60 shares of B & M stock, and Hayes likewise endorsed in blank on its reverse side the certificate evidencing his ownership of 15 shares of B & M stock. Vandivort handed his endorsed stock certificate to Hayes at the drug store, and the latter then took both of the endorsed stock certificates to the office of their attorney, William E. Seay, in Salem where he (Hayes) left them with Seay or his secretary, Mrs. Gertie Hayes, the mother of plaintiff Hayes. Later that same day, Willard Eugene Camden, B & M's president, general manager and majority stockholder, and Charles D. Dodds, defendant's secretary-treasurer and one of the two officers who executed the notes in suit on behalf of defendant corporation, met with attorney Seay in his office. Seay's secretary, Mrs. Gertie Hayes, also was there. Three of those present on that occasion, namely, Camden, Mrs. Hayes and Seay, were called to the witness stand by plaintiffs. Dodds did not testify.

Camden's testimony bearing upon the critical issue of delivery vel non of plaintiffs' stock certificates was: "I had [my stock certificate] and Charles Hayes' and

---

of an attorney's fee also is sought, the forms of verdict in MAI 32.09 might well be modified [Rule 70.01(e)] by inclusion of a form providing, in the event of a verdict in favor of plaintiff, for separate assessments of principal, interest and attorney's fee [see MAI 32.10], followed by a statement of the total recovery thus assessed.

7. However, it may be appropriate to record our grave doubt whether, even if (contrary to our hereinafter-stated conclusion) the case had been for the jury, the record before us would permit a finding of prejudicially reversible error in the giving of

instruction 9 or in the form of verdict returned. See Cobb v. Cosby, Mo.App., 416 S.W.2d 222, 225–226(7).

8. Traner v. Sphalerite Mining Co., 243 Mo. 359, 370–371, 148 S.W. 70, 72–73(1); Waldmann v. Skrainka Construction Co., 289 Mo. 622, 233 S.W. 242, 245(1); Bello v. Stuever, Mo., 44 S.W.2d 619, 620–621(2); Burks v. Buckmiller, Mo. App., 349 S.W.2d 409, 411(1); Summers v. Peoples Elevator Co., Mo.App., 136 S.W.2d 81, 83(8); Roehl v. Ralph, Mo. App., 84 S.W.2d 405, 408–409(1); 5A C.J.S. Appeal and Error § 1773(1), l. c. 1241–1242; id. § 1774b, l. c. 1273–1274.

Jimmy Vandivort's [stock certificates] were on Bill Seay's desk and I picked theirs up and put with mine and handed them to Charles Dodds." Camden then identified plaintiffs' stock certificates endorsed in blank as being those which, with his own certificate, he had handed to Dodds in Seay's office. "Mr. Seay [asked] of Mr. Dodds if he wanted him [Seay] to transfer the stock. In other words, fill out the [assignment]—put a name in it and Charles [Dodds] said 'you might as well.' And he in turn handed them [the stock certificates] to Mr. Seay and Mr. Seay put one of them in the typewriter and then Charles says 'well, wait a minute, Bill.' He says 'now, I better talk to the boys about this; they may want something else put on there.' He said, 'would you [Seay] mind keeping them here for a few days in your safe until I find out.'" Witness Camden and Dodds then left Seay's office together.

The testimonial narrative of Mrs. Hayes concerning the same meeting follows: "Eugene [Camden] picked up the stocks from the table and handed them to Charles Dodds and told him 'here are all the stocks —the certificate of stocks of the B & M Express Company.' Charles looked them all over and then Mr. Seay told him that he might as well sign them over to the Dodds Truck Line and he [Dodds] said 'yes, go ahead.' Mr. Seay took one of the certificates and put it in his typewriter, which he had on his desk, and started to type and Charles Dodds stopped him. And he said 'well, I believe that I'd better take this up with the boys, Bill, because I'm not sure just how they want their name to appear on these certificates.' And he said 'if it's all right with you, I would like for you to put these stocks in your safe and I

will come for them in a few days." Neither Charles Dodds nor any other officer of defendant corporation came to "pick up" those stock certificates "to my [Mrs. Hayes'] knowledge." On cross-examination the witness agreed that Seay "kept them in his office . . . because Charles [Dodds] asked him to keep them in his safe."

After a few preliminary questions had been answered by attorney Seay on the witness stand, defendant's counsel objected to any further testimony by Seay because "he's an attorney of record for the party plaintiffs in this cause and I believe the Missouri courts have held that . . . it is not permissible and it is reversible error for counsel to testify." [9] When, after a recess, attorney Seay was reoffered as a witness, he was greeted with a renewal of the above protest coupled with the further objection that, although he had not participated in the trial and had not been at the counsel table, he had "remained seated back in the court room all during the testimony" after the court had, at the outset, granted defendant's request for "the rule on the witnesses." Removed from the witness stand by the court's sustention of defendant's objections, plaintiffs' trial counsel made a detailed offer of proof. Although this offer will not be summarized here since it is not for consideration on this appeal, it may be observed that nothing therein would have afforded the slightest support for defendant's affirmative defense.

■ At the time of the transactions under discussion, Section 403.050, subsection 1(1), of the Uniform Stock Transfer Law (USTL)[10] provided that "[t]*itle to a cer*-

---

9. Those interested in what "the Missouri courts have held" may consult Rule 4.19 of the Canons of Ethics and the Missouri cases annotated thereunder.

10. Although the Uniform Stock Transfer Law [Chapter 403] was repealed by the Uniform Commercial Code [Laws 1963,

p. 637, § 10–102(2)], the USTL was applicable to the transactions under discussion, which occurred prior to July 1, 1965, the effective date of the UCC. Laws 1963, p. 637, § 10–101; 20A V.A.M.S. p. 2; Laws 1963, p. 637, § 10–102(2); V.A.M.S. § 400.10–101. Many of the provisions of the USTL are now, in sub-

**234**

*tificate and to the shares represented thereby can be transferred* only (1) *[b]y delivery of the certificate endorsed* either *in blank* or to a specified person *by the person appearing by the certificate to be the owner of the shares represented thereby . . . ."* (All emphasis herein is ours.) Section 403.020, subsection 1(2), of the USTL defined *"delivery"* as *"voluntary transfer of possession from one person to another."*[11] And Section 403.040 of the USTL declared that *"[a] certificate is endorsed . . . when the signature of such person* [appearing by the certificate to be the owner of the shares represented thereby] *is written without more upon the back of the certificate . . . ."*

Defendant's post-submission memorandum is prefaced by the boldfaced heading that "the trial court properly overruled plaintiffs' motion for a directed verdict, as all the evidence, considered in a light most favorable to defendant, made a submissible issue of defendant's affirmative defense of lack of or failure of consideration." In painstaking examination of the memorandum we sift out the two contentions advanced by counsel in support of the quoted statement, to wit, (1) it was "essential that plaintiffs or their authorized agents deliver their stock certificates to the defendant," whereas "Camden, an agent of neither Vandivort or Hayes, physically handed the stock certificates in question to Charles Dodds," and (2) "Charles Dodds, however, did not accept the stock certificates endorsed in blank and handed the certificates back to attorney Seay for completion of the endorsement" so "the voluntary transfer of possession was rejected and possession stayed with the plaintiffs or their agent, attorney Seay."

*Of contention (1).* Camden, plaintiffs' witness who was president, general manager and controlling stockholder of B & M, handed to Dodds at the same time his own stock certificate and those of plaintiffs. Nothing in the evidence even remotely suggests that this physical delivery of plaintiffs' stock certificates was wrongful or unauthorized. Many years ago a master of the law and language, with the full concurrence of his brethren, sagely observed that "[a]ll things are presumed to be lawfully done, until proof be made to the contrary" [Hartwell v. Parks, 240 Mo. 537, 546, 144 S.W. 793, 795(2)]—a presumption which has been accorded ready recognition in a broad spectrum of factual situations.[12] In the absence of any evidence indicating that Camden was "an agent of neither Vandivort or Hayes," we may not so find on the basis of the extraneous statement of defendant's attorneys in no wise supported by the transcript or conceded by adversary counsel.[13] Defendant's first contention must be rejected.

stance, embodied in the UCC. See the "Table of Prior Statutory Provisions" in 20A V.A.M.S. p. LXIII.

11. Section 400.1–201(14) of the UCC similarly defines "delivery" as "voluntary transfer of possession."

12. State ex rel. Kugler v. Tillatson, Mo. (banc), 312 S.W.2d 753, 757(7) ; Sebastian County Coal & Mining Co. v. Mayer, 310 Mo. 104, 111–112, 274 S.W. 770, 772(2) ; State ex rel. Douglas v. Reynolds, 276 Mo. (banc) 688, 694, 209 S.W. 100, 101(1) ; Allen v. Jessup, Mo., 192 S.W. 720, 723(5) ; McCallister v. Ross, 155 Mo. 87, 94, 55 S.W. 1027, 1028; State ex rel. Gracy v. Bank of Neosho, 120 Mo. 161, 169, 25 S.W. 372, 374 ; Thomas v. Fitch, Mo.App., 435 S.W.2d 703, 708(5, 6) ; Groh v. Shelton, Mo.

App., 428 S.W.2d 911, 913(1). See Lipscomb v. Talbott, 243 Mo. 1, 35, 147 S.W. 798, 807(8) ; Fitzgerald v. Barker, 85 Mo. 13, 20–21; C.I.T. Corporation v. Straub, Mo.App., 11 S.W.2d 759, 760.

13. Rickard v. Rickard, Mo.App., 428 S.W. 2d 919, 923(4) ; Landers v. Smith, Mo. App., 379 S.W.2d 884, 887(4) ; Baker v. Missouri National Life Ins. Co., Mo. App., 372 S.W.2d 147, 155(11, 12) ; Lubrication Engineers, Inc. v. Parkinson, Mo.App., 341 S.W.2d 876, 879(9) ; In re Jackson's Will, Mo.App., 294 S.W.2d 953(1). See Phoenix v. Metropolitan Life Ins. Co., Mo., 379 S.W.2d 626, 628 (2) ; Pruitt v. St. Johns Levee & Drainage Dist., 341 Mo. 120, 127, 106 S.W.2d 467, 471(5) ; Montgomery v. Travelers Protective Ass'n. of America, Mo.App., 434 S.W.2d 17, 20.

*Of contention* (2). We have heretofore detailed fully the evidence bearing upon the issue as to delivery vel non of plaintiffs' stock certificates. All of it ran along the same line, to wit, that in the meeting at attorney Seay's office on November 1, 1960, those stock certificates endorsed in blank actually were handed to and received by Charles Dodds, defendant's secretary-treasurer. By that means and in that manner, those certificates were delivered to defendant and "[t]itle to [those] certificate[s] and to the shares represented thereby" [§ 403.050, subsec. 1(1)] was transferred to defendant.[14] And that delivery and transfer of title were not nullified or affected by the fact that Dodds thereafter handed the same certificates to Seay, *initially* in order that the name of the transferee might be inserted in the assignment on the reverse side of each certificate theretofore endorsed in blank by the transferor, i. e., "by the person appearing by the certificate to be the owner of the shares represented thereby" [§ 403.040], but *on second thought* for the safekeeping by Seay in his office safe until Dodds ascertained from "the boys . . . just how they [wanted] their name to appear on these certificates" or whether they might desire "something else put on there." The inferences that defendant would draw from this uncontradicted testimony, i.e., that Dodds "did not accept [plaintiffs'] stock certificates endorsed in blank" and that the voluntary transfer of possession of those stock certificates "was rejected"[15] by Dodds, are not (so we are convinced) fairly and reasonably deducible therefrom. We conclude that defendant's second contention is likewise without merit and that the evidence wholly failed to raise a submissible issue on the sole affirmative defense of lack or failure of consideration.

In a parenthetical afterthought, defendant's counsel for the first time complain in the penultimate paragraph of their post-submission memorandum that "neither the pleadings nor the evidence contained any offer or tender" of plaintiffs' stock certificates and "defendant feels that the failure of plaintiff (sic) to tender the stock certificates into court by itself would be fatal in this case." Although we remark in passing that we do not share defendant's "feeling," it is sufficient for the purposes of this opinion to point out that the stated complaint is not before us for discussion or disposition (1) because no such allegation of error was at any time presented to or expressly decided by the trial court[16] and (2) because, even if it had been so presented there, it would not be preserved for appellate consideration by initial inclusion in a post-submission memorandum.[17]

In view of the fact that plaintiffs sued upon promissory notes admittedly executed and delivered by defendant and the sole affirmative defense failed as a matter of law, plaintiffs were entitled to directed

14. See Turner v. Mitchell, Mo., 297 S.W.2d 458, 466(9) ; Desmond v. Pierce, 185 Wis. 479, 201 N.W. 742, 746(2) ; Chatz v. Midco Oil Corp., 7 Cir., 152 F.2d 153, 154, 155(6), certiorari denied 329 U.S. 717, 67 S.Ct. 49, 91 L.Ed. 622, rehearing denied 329 U.S. 825, 67 S.Ct. 181, 91 L.Ed. 701.

15. To reject is "to refuse to . . . receive" or "decline to accept." Webster's Third New International Dictionary, p. 1915.

16. Rules 79.03 and 83.13(a) ; § 512.160 (1) ; Olsten v. Susman, Mo., 391 S.W. 2d 328, 331(12), 15 A.L.R.3d 1095; State ex rel. State Highway Com'n. v. Dockery, Mo., 340 S.W.2d 689, 695(8) ; Van Berg v. Koch, Mo.App., 413 S.W.2d 588, 590 (1) ; Allen v. Smith, Mo.App., 375 S.W. 2d 874, 881–882(16) ; Grapette Co. v. Grapette Bottling Co., Mo.App., 286 S.W. 2d 34, 36–37(2, 3).

17. In re Bierman's Estate, Mo., 396 S.W. 2d 545, 547–548(6) ; Griggs v. Miller, Mo., 374 S.W.2d 119, 126(12) ; Barnard v. Murphy, Mo., 365 S.W.2d 614, 619–620(4) ; Denney v. Spot Martin, Inc., Mo.App., 328 S.W.2d 399, 405(6) ; State ex rel. Joslin v. School Dist. No. 7 of Jasper County, Mo.App., 302 S.W.2d 497, 500–501(8).

verdicts;[18] and, since there was no affirmative defense of payment [Rule 55.10; § 509.090] and no controversy concerning the amount due (if the sole pleaded affirmative defense failed), it became proper and appropriate for the trial court to direct a verdict for the entire sum due each plaintiff, including interest from date at the specified rate of 6% per annum, compounded semiannually [Home Trust Co. v. Josephson, 339 Mo. 170, 186, 95 S.W.2d 1148, 1156(13), 105 A.L.R. 1063; Sides v. Mannino, Mo.App., 347 S.W.2d 391, 395 (10)], and an attorney's fee of an additional 10% as provided in each note. John Deere Co. of St. Louis v. Davis, Mo.App., 335 S.W.2d 686, 689(5); Wright v. Dodson, Mo.App., 147 S.W.2d 180, 182(4, 5).

Our mathematical calculations have satisfied us that the amount of the judgment on each count was not excessive, and there has been no suggestion to the contrary by defendant. Accordingly, the judgment for plaintiff Vandivort on Count I in the aggregate sum of $10,335 and for plaintiff Hayes on Count II in the aggregate sum of $2,586, entered in the circuit court on May 3, 1968, is affirmed.

TITUS, J., concurs.

HOGAN, P. J., not participating.

18. Central States Life Ins. Co. v. Bloom, 345 Mo. 982, 986, 137 S.W.2d 517, 519 (5); Home Trust Co. v. Josephson, 339 Mo. 170, 179–180, 95 S.W.2d 1148, 1152 (9), 105 A.L.R. 1063; John Deere Co. of St. Louis v. Davis, Mo.App., 335 S.W. 2d 686, 689(5); Wright v. Dodson, Mo. App., 147 S.W.2d 180, 182(2); Sturdivant Bank v. Houck, Mo.App., 215 S.W. 758, 759(3). See Becker v. Tower National Life Investment Co., Mo., 406 S.W. 2d 553, 558(9); Knisely v. Leathe, Mo. (banc), 178 S.W. 453, 461(11); Ford v. Dyer, 148 Mo. 528, 541–542, 49 S.W. 1091, 1095(7); J. R. Watkins Co. v. Smith, Mo.App., 421 S.W.2d 527, 531–532(4); Hunt v. United States Fire Ins. Co. of New York, 239 Mo.App. 625, 642, 193 S.W.2d 778, 789(19, 20).